**Jeffrey L. CATE**

v.

**CNA INSURANCE COMPANIES, d/b/a Continental Casualty Company.**

No. 3–96–1175.

United States District Court.
M.D. Tennessee,
Nashville Division.

May 14, 1997.

Stephen C. Crofford, Stacy E. Gibson, Parker, Allen & Crofford, Nashville, TN, for Plaintiff.

Steven Douglas Parman, Watkins, McGugin, McNeilly & Rowan, Nashville, TN, for Defendant.

HIGGINS, District Judge.

## I.

The plaintiff, Jeffrey L. Cate, filed this action on December 23, 1996, to recover ERISA benefits. In his complaint, he alleges that the defendant, CNA Insurance Companies, d/b/a Continental Casualty Company, wrongfully denied him benefits under a long-term disability plan.

Mr. Cate's employer, FISI–Madison Financial, maintained a self-insured short-term disability plan for its employees, which CNA administered.[1] FISI–Madison also maintained a long-term disability plan, which CNA insured and administered. The summary plan description provided to the employees explained that "[i]f you become disabled and your disability lasts longer than 13 weeks, long term disability benefits will provide continuing income after your STD [2] benefits end." Administrative record (filed March 14, 1997; Docket Entry No. 8) at 004. If an employee is eligible for benefits under the long-term disability plan, that employee receives a monthly benefit equal to 60% of his or her monthly compensation.[3]

In April of 1993, FISI–Madison hired Mr. Cate as a computer analyst/manager. Mr. Cate began to experience health problems in April of 1994.[4] On October 11, 1995, he filed a claim for disability benefits with CNA. Mr. Cate collected benefits under the short-term disability plan from approximately October 5, 1995, until December 28, 1995. He acknowledges in his complaint that FISI–Madison paid all that it was responsible for under the short-term plan.

After the short-term benefits expired, Mr. Cate's claim was transferred to the long-term disability plan. To support his claim for long-term benefits, Mr. Cate furnished several attending physicians' statements to CNA. Mr. Norman G. Jones [5] submitted a statement dated December 20, 1995, diagnosing Mr. Cate with symptoms of recurrent panic attacks, sleep disturbance, floating anxiety, and irritable bowel syndrome. *Id.* at 095. Mr. Jones noted that Mr. Cate's progress was improved, and that he was still away from the work setting.

---

1. The short-term disability plan provided up to 12 weeks of income if (1) an illness or injury prevented the employee from performing the regular duties of his job, and (2) the employee was under the regular care of a legally qualified physician. Administrative record (filed March 14, 1997; Docket Entry No. 8) at 002–003.

2. Short-term disability.

3. This monthly benefit is reduced by certain types of disability income received by the employee, such as workers' compensation and social security benefits. The monthly benefit is also reduced by any partial disability benefits earned by the employee, as well as any rehabilitative employment benefits earned.

4. These health problems included depression, neck pain, diarrhea, and a spastic colon. Administrative record (Docket Entry No. 8) at 028.

5. Mr. Jones is a licensed psychological examiner.

In the section of the attending physician's statement labeled "Mental/Nervous Impairment,"[6] Mr. Jones defined Mr. Cate's stress as the "progressive increase of immobilizing anxiety and mood disturbance related to increased work pressure and expectations." *Id.* He further noted that Mr. Cate was "not functional in present work setting." *Id.*

In the section labeled "Prognosis,"[7] Mr. Jones advised that Mr. Cate "not return to present work setting." *Id.* In answer to the question "[d]o you expect a fundamental or marked change in the future" with regard to Mr. Cate's job, Mr. Jones stated "yes," but he specifically noted that "job" did not include Mr. Cate's present position.[8] In answer to the same question with regard to any other work, Mr. Jones stated "yes." *Id.*

A second attending physician's statement dated January 4, 1996, was submitted by Dr. David W. Havens, indicating a diagnosis of a major depressive disorder, the symptoms of which included panic attacks, sleep disturbance, and an irritable bowel. *Id.* at 094. Dr. Havens noted that Mr. Cate was totally disabled from November 2, 1995, to the date of the statement.

In the mental/nervous impairment section of the statement, Dr. Havens noted that Mr. Cate was able to engage in only limited stress situations and engage in only limited interpersonal relations. *Id.* In the prognosis section, Dr. Havens stated: "Can't answer/ I am not seeing this patient for ongoing treatment." *Id.* Dr. Havens did not answer any of the questions in the rehabilitation section. *Id.* In a separate form sent to CNA, Dr. Havens noted that Mr. Cate's expected return to work date was January 1, 1996. *Id.* at 092–93.

A third attending physician's statement dated January 23, 1996, was submitted by

Dr. Michael Bernui. *Id.* at 082. Dr. Bernui noted that Mr. Cate was totally disabled from October 9, 1995, to the date of the statement. Dr. Bernui also noted that Mr. Cate "will have transient improvement and then retrogress." *Id.* In the mental/nervous impairment section, Dr. Bernui stated "see report Dr. Havens and Norman Jones." *Id.* In the sections labeled prognosis and rehabilitation, Dr. Bernui wrote "I have left this up to treating psychiatrists Dr. Havens and Dr. Roberson."[9] *Id.*

On January 9, 1996, CNA referred Mr. Cate's file to its staff psychologist, Dr. Charles W. Paskewicz, for review. On January 17, 1996, Dr. Paskewicz wrote to Mr. Jones, asking him whether Mr. Cate was "capable of returning to work presently with another employer if he cannot return to his current employer?" *Id.* at 047. Dr. Paskewicz also asked "[w]hat accounts for the worsening of this patient's symptoms despite being out of work and the treatment you have given?" *Id.* Mr. Jones replied on February 5, 1996, and explained that Mr. Cate was

> capable to return to work status, but I have recommended he not return to same position. It appears that cumulative stress and increasing demands of that position as computer analyst/manager greatly contributed to his recent distress. It is my understanding that other suitable positions within his company are not available.

*Id.* at 060.

On February 19, 1996, CNA notified Mr. Cate that his claim for total disability benefits under the long-term disability plan was denied. CNA explained that Mr. Cate did not meet the definition of "total disability," as Mr. Jones indicated that Mr. Cate was capable of returning to work.

---

**6.** In the mental/nervous impairment section, the physician is asked "[w]hat stress and problems in interpersonal relations has claimant had on job?" *See* administrative record (Docket Entry No. 8) at 095.

**7.** In the prognosis section, the physician is asked "[w]hat duties of patient's job is he/she unable to perform," and "[d]o you expect a fundamental or marked change in the future?" *See* administrative record (Docket Entry No. 8) at 095.

**8.** Mr. Jones expressly stated that Mr. Cate needed to seek a new position.

**9.** On January 22, 1996, Mr. Cate wrote FISI–Madison and explained that he had switched psychiatrists from Dr. David Havens to Dr. Clifford Roberson. Administrative record (Docket Entry No. 8) at 058.

He recommended you do not return to the same position, but you need to seek new a position. (sic) This indicates you may resume the substantial and material duties of your regular occupation with another employer.... This Plan provides benefits only when you are considered Totally Disabled from the substantial and material duties of your regular occupation, not your place of employment. There is no indication of a condition of severity which would preclude you from performing the substantial and material duties of your regular occupation in another work setting or with another employer.

*Id.* at 063–64.

Mr. Cate appealed this decision on February 29, 1996, claiming his condition was very severe and he could no longer perform the substantial and material duties of his regular occupation. In his notice of appeal, Mr. Cate contended that Mr. Jones advised him to find another, less-stressful occupation; not the same occupation with a different employer. Mr. Cate also asserted his right to rehabilitative employment benefits once he resumed work in some other position.

In the course of the appeal, Mr. Jones sent a revised statement to the appeals committee. Mr. Jones clarified that he had not recommended that Mr. Cate return to the position of manager/program analyst, but rather that he began to seek part-time employment with full-time employment potential in a non-managerial role. Mr. Jones stated "[i]t is very likely that returning to the substantial and material duties outlined by his present position as manager/program analyst would result in the recurrence of same severity of symptoms noted previously in my original letter." *Id.* at 078.

Mr. Cate also submitted a fourth attending physician's statement in the course of the appeal, from Dr. Clifford Roberson dated March 25, 1996. *Id.* at 098–99. Dr. Roberson diagnosed Mr. Cate with a major depressive disorder, and a generalized anxiety disorder. Dr. Roberson noted that Mr. Cate had been totally disabled from October, 1995, to the date of the statement. *Id.* at 098.

In the prognosis section, Dr. Roberson stated "cannot return to previous work." *Id.*

at 099. When asked if he expected a fundamental or marked change in the future as to Mr. Cate's job, Dr. Roberson replied "no." *Id.* However, when asked if he expected a fundamental or marked change in the future as to any other work Mr. Cate might perform, Dr. Roberson replied "yes" and noted recovery might be in three to six months. *Id.* In an attached explanatory letter, Dr. Roberson stated "I believe Mr. Cate has reached the maximum level of improvement for him. He has complied with all treatment recommendations but still notes anxiety, inability to concentrate or make decisions and decreased libido. He has failed all attempts to return to his previous level of occupational functioning." *Id.* at 100.

On June 3, 1996, CNA's appeals committee notified Mr. Cate that his appeal had been denied. The notice explained that "[t]he Committee received no objective medical information that superseded Dr. Havens suggested return to work date of 1/1/96." *Id.* at 079. The committee concluded by noting:

A major depressive disorder should resolve in a short period of time with proper medical management. It appears Mr. Cate has been appropriately managed. It is conjectured that disability exists because of the stressors of the current job. Mr. Cate has the ability to apply his occupational skills to a less stressful environment. Inability to adapt to the stress of the occupation at one particular employer does not equate to disability from that occupation considering its' availability with other employers.

*Id.* at 080.

Mr. Cate appealed this decision by filing the present action on December 23, 1996. He claims that CNA's refusal to pay benefits under the long-term disability plan violated the terms of the disability plan and constituted a breach of contract under ERISA. CNA denies that Mr. Cate is entitled to recover further disability benefits pursuant to the long-term disability policy.

## II.

As provided by Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, deposi-

tions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202, 211 (1986). In its consideration of the evidence, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. *Davidson & Jones Dev. Co. v. Elmore Dev. Co.,* 921 F.2d 1343, 1349 (6th Cir.1991).

In order to prevail on a summary judgment motion, the moving party bears the burden of proving the absence of a genuine issue of material fact concerning an essential element of the opposing party's action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986); *Davidson & Jones Dev. Co.,* 921 F.2d at 1349; *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). A dispute about the material fact must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." [10] *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Since the preponderance of the evidence standard is used in this determination, more than a mere scintilla of evidence in support of the plaintiff's position is required. *Id.* at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

Once a motion for summary judgment has been made, "the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e)." *Davidson & Jones Dev. Co.,* 921 F.2d at 1349. The non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274; *Cloverdale Equip. Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989). While the disputed issue does not have to be resolved conclusively in favor of the non-moving party

to defeat summary judgment, "sufficient evidence supporting the claimed factual dispute" must be shown, thereby requiring resolution of the parties' differing versions of the truth by a jury or judge. *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212; *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592 (1968).

### III.

#### A. Standard of Review

Absent an administrator's "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the appropriate standard for reviewing an administrator's denial of ERISA benefits is the de novo standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80, 95 (1989); *McMahan v. New England Mut. Life Ins. Co.,* 888 F.2d 426, 430 (6th Cir.1989).

Under such circumstances, therefore, a federal court's role in reviewing a decision to deny benefits within the ERISA context is "to determine whether the administrator or fiduciary made a correct decision." *Perry v. Simplicity Eng'g,* 900 F.2d 963, 966 (6th Cir.1990). In its de novo review, the district court pays no deference to an administrator's determination of benefits nor does it presume that the administrator's decision was correct. *Id.* Instead, the court makes a determination of whether the administrator properly interpreted the benefits plan and whether the employee was entitled to benefits under the plan. *Id.*

Although the Supreme Court of the United States did not specify in *Bruch* whether the court's de novo review should be limited to the record before the administrator at the time of its benefits determination or whether additional evidence should be considered by the reviewing court, the United States Court of Appeals for the Sixth Circuit has concluded that the review must be limited to the

---

10. The Supreme Court further explained that a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

record before the administrator at the time of the decision. *Perry,* 900 F.2d at 966 (review required by *Bruch* "is a *de novo* review of the record before the administrator or fiduciary"). In arriving at this conclusion, the Sixth Circuit explained that the role of the federal courts would essentially be that of "substitute plan administrators" if they "received and considered evidence not presented to administrators concerning an employee's entitlement to benefits." *Id.* Furthermore, a reviewing court's consideration of evidence not presented to plan administrators not only would convert the federal courts' role into that of "substitute plan administrators," *id.,* which was not intended by Congress in enacting ERISA, but also would result in employees and their beneficiaries receiving less protection than Congress intended. *Id.* at 967.

### B. *Mr. Cate's Entitlement to Benefits*

The first part of the Court's de novo review involves a determination of whether a genuine issue of material fact exists as to whether CNA properly interpreted the benefits plan when it denied benefits to Mr. Cate. *Id.* at 966. The second part of the Court's review involves a determination of whether a genuine issue of material fact exists as to whether Mr. Cate was entitled to benefits under the long-term disability plan. *Id.* The Court does not reach the first part as it finds a genuine issue exists as to whether Mr. Cate was entitled to benefits.

#### 1. *"disabled"*

Under the long-term disability plan, an employee is eligible for benefits when he or she becomes disabled and that disability lasts longer than thirteen weeks. Administrative record (Docket Entry No. 8) at 004. While the summary plan description does not contain a definition for "disabled" or "disability," it does contain the following three definitions:

*"Partial Disability"* means you return to your regular occupation on a partial and/or part-time basis. You must be under the care of a licensed physician and continu-

ously unable to perform the substantial and material duties of your regular occupation.

*"Rehabilitative Employment"* means you return to any gainful employment in any occupation other than your regular occupation, on a full-time or part-time basis. You must be under the care of a licensed physician and continuously unable to perform the substantial and material duties of your regular occupation.

*"Total Disability, Totally Disabled"* ... you are unable to perform the substantial and material duties of your own occupation due to sickness or accidental injury up to 24 months. After 24 months, you are unable to perform work at any occupation which you are or could reasonably become qualified to do by education, training or experience.

Administrative record (Docket Entry No. 8) at 007.

The definitions for both partial disability and rehabilitative employment contain the phrase "unable to perform the substantial and material duties of your regular occupation." *Id.* The definition of total disability uses a similar phrase: "unable to perform the substantial and material duties of your own occupation." *Id.* While the latter definition refers to "your own occupation" rather than "your regular occupation," the actual insurance policy[11] issued by CNA defines total disability in terms of the employee's "regular occupation." Under the definition in the policy:

"Total Disability" means that ... the Insured Employee, because of Injury or Sickness, is

(1) continuously unable to perform the substantial and material duties of his regular occupation;

(2) under the regular care of a licensed physician other than himself; and

(3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

---

**11.** The insurance policy is the document issued by CNA to FISI–Madison. Administrative record (Docket Entry No. 8) at 010–27. The summary plan description is a description of this policy provided by FISI–Madison to its employees pursuant to ERISA, 29 U.S.C. § 1022. *Id.* at 001–009.

*Id.* at 019.[12] This policy also explains that " 'Disability' means Total Disability, Partial Disability, and Rehabilitative Employment." *Id.*

[4] When a summary plan description and an underlying plan policy contain conflicting language, the summary plan description controls. *Edwards v. State Farm Mut. Auto. Ins., Co.,* 851 F.2d 134, 136 (6th Cir. 1988). However, when a summary plan description and a policy are consistent and susceptible to the same interpretation, the Court may look to the policy to help interpret the summary plan description. *Wendy's Int'l. Inc. v. Karsko,* 94 F.3d 1010, 1013 (6th Cir.1996).

The Court finds that despite minor variations, the summary plan description and the underlying insurance policy use essentially the same terminology to define "disability" and do not contain conflicting language. Accordingly, the Court may consider the policy in its interpretation of "disability" as used in the summary plan description.

■ Given the absence of a common definition of "disability" in the summary plan, and the policy's definition of "Total Disability, Partial Disability, and Rehabilitative Employment," the Court finds an employee is disabled under the long-term disability plan when he or she is eligible for total disability, partial disability or rehabilitative employment benefits. As the definitions of each of these types of disability contain the phrase "unable to perform the substantial and material duties of his regular occupation," the Court finds this common phrase to be the definition of "disability." [13]

**12.** The policy's definitions of partial disability and rehabilitative employment are essentially the same as the definitions in the summary plan description.

**13.** Under this interpretation, an employee who is disabled but has returned to his or her regular occupation on a part-time basis is eligible for partial disability benefits. An employee who is disabled but has returned to gainful employment in any other occupation is eligible for rehabilitative employment benefits. An employee who is disabled and not gainfully employed in any occupation is eligible for total disability benefits.

In its decision to deny benefits, CNA focused exclusively on whether Mr. Cate met the defini-

### 2. "unable to perform the substantial and material duties of his regular occupation"

■ Under this definition of disabled, the Court finds that a genuine issue of material fact remains as to whether the record supports a denial of benefits. Specifically, the Court finds the record lacks any evidence of the substantial and material duties of Mr. Cate's occupation or of Mr. Cate's ability to perform those duties.

Under the long-term disability plan, Mr. Cate is entitled to benefits if he meets the definition of "disabled," which means he is unable to perform the material and substantial duties of his regular occupation. According to Mr. Cate, his occupation is that of a computer systems analyst/manager who manages large complex software projects for large corporations. Administrative record (Docket Entry No. 8) at 067.[14] The record, however, contains no evidence as to the substantial and material duties of a computer systems analyst/manager. No mention is made of the occupation's technical, monetary or managerial duties, nor whether more time is spent programming computers or managing people, nor the amount of time spent training others, or attending continuing education courses, or developing new programs, nor the number of people or computers for which he is responsible.

The doctors speak of Mr. Cate being unable to return to his former position, and the defendant focuses on whether Mr. Cate could work for another employer, but no one discusses the duties which Mr. Cate is able or unable to perform. As an eligibility determi-

tion of "total disability." Administrative record (Docket Entry No. 8) at 063–64. Such terminology is inaccurate, given that Mr. Cate need only meet the definition of "disabled." However, despite the inaccurate label, CNA focused on whether Mr. Cate could resume the substantial and material duties of his regular occupation. Id. As this is the essential definition at issue, the Court finds the erroneous reference to total disability to be harmless.

**14.** CNA makes no reference to Mr. Cate's occupation, thus does not seem to dispute this occupational label.

nation turns on whether Mr. Cate is capable of performing the substantial and material duties of his occupation, an explanation and discussion of these duties seems essential.

Summary judgment is not appropriate when a genuine issue of material fact exists regarding the plaintiff's status as disabled. *See Moon v. White,* 909 F.Supp. 1047, 1053 (E.D.Tenn.1993); *Brown v. Washington Nat'l Ins. Co.,* 942 F.Supp. 1078, 1080–81 (E.D.La.1996). As the scope of the Court's determination is limited to the record before the administrator at the time of its benefits determination, and as that record contains no evidence of the material and substantial duties of a computer systems analyst/manager, the Court finds that a genuine issue of material fact remains regarding Mr. Cate's status as "disabled."

A genuine issue exists not only as to the nature of the material and substantial duties of Mr. Cate's occupation, but also as to whether Mr. Cate is capable of performing those duties. The various medical summaries in the record offer conclusory opinions as to whether Mr. Cate was disabled, and whether he was capable of returning to work, but no one discusses whether Mr. Cate was able to perform his specific occupational duties. Mr. Jones notes that the stress of being a computer analyst/manager contributed to Mr. Cate's recent distress, and Dr. Roberson states that Mr. Cate had reached maximum improvement and could not return to his previous work, but he indicates that Mr. Cate was capable of working. However, there is nothing in the record addressing Mr. Cate's actual duties and which ones he can or cannot perform.

### IV.

■ Given the absence of any evidence in the record as to the substantial and material duties of Mr. Cate's occupation, and as to his ability to perform those duties, the Court shall remand the action to the plan administrator for reconsideration and further development of the record.

Remand is appropriate as the Court is limited to the record before the administrator, yet the record contains a genuine issue of material fact. If the Court were to deny the summary judgment motions and allow the case to go forward for trial, the same limited record would still be before the Court. Only upon a remand to the plan administrator can the record be further developed so as to determine whether Mr. Cate is entitled to benefits.

The United States Court of Appeals for the Second Circuit remanded a similar case in *Miller v. United Welfare Fund,* 72 F.3d 1066, 1073 (2d Cir.1995).[15] In *Miller,* the Court explained that a plan administrator's decision to deny to benefits was arbitrary and capricious [16] because it was not based on substantial evidence. Accordingly, the *Miller* Court remanded the case to the district court with instructions to return the case to the plan administrator for reconsideration in light of the evidence presented by both sides. *Id.*

Based on the record before the administrator at the time of the benefits determination, the Court finds a genuine issue of material fact exists as to whether Mr. Cate is entitled to benefits under the plan. *Perry,* 900 F.2d at 966.

### V.

As the medical proof addresses only Mr. Cate's ability to return to his job without addressing his ability to perform the substantial and material duties of his regular occupation, the plaintiff has failed to show the absence of a genuine issue of material fact. Accordingly, the plaintiff's motion for

---

**15.** While the Sixth Circuit has not addressed this specific situation, it has determined that remand is unnecessary when it would be a "useless futility." *Kent v. United of Omaha Life Ins. Co.,* 96 F.3d 803, 807 (6th Cir.1996).

**16.** While the *Miller* Court reviewed the administrator's decision under an arbitrary and capricious standard, its review was still limited to the record before the administrator. *Miller,* 72 F.3d

at 1071. In *Perry,* the Sixth Circuit explained that neither the de novo nor the arbitrary and capricious standards of review permit consideration of evidence not presented to the plan administrator. *Perry,* 900 F.2d at 967. Given that both standards of review are limited to the record, the Court finds *Miller* analogous to the present case.

summary judgment is denied. Likewise, the defendant's cross-motion for summary judgment is also denied.