**Judith DOUGLAS, Plaintiff,**

v.

**EVANS INDUSTRIES, INC., a Florida Corporation, Great Lakes Plastics Corp., A Michigan Corporation, and Union Central Life Insurance Co., a Delaware Corporation, jointly and severally, Defendants.**

No. 00–CV–75525–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 2, 2001.

Henry J. Andries, David M. Davis, Hardy, Lewis, Birmingham, MI, for plaintiff.

David H. Oermann, Denise E. Lopez, Butzel Long, Bloomfield Hills, MI, for defendants.

## *OPINION*

DUGGAN, District Judge.

Following the denial of her claim for life insurance benefits under her late husband's life insurance policy, Plaintiff brought this ERISA action against Defendants challenging that denial of benefits. At a hearing held on August 9, 2001, Defendant Union Central Life Insurance Company, the plan administrator, acknowledged that in light of a recent Sixth Circuit case its previous decision denying life insurance benefits to Plaintiff must be reversed. However, the parties disputed the amount of life insurance benefits to which Plaintiff is entitled. The parties agreed to have the Court make a determination on the amount of life insurance benefits Plaintiff is entitled to, rather than have that issue referred back to the plan administra-

tor. The parties have since submitted supplemental briefs addressing the issue. For the reasons set forth below, the Court .concludes that based upon the evidence presented, Plaintiff is entitled to life insurance benefits in the amount of $10,000.

### Background

Plaintiff Judith Douglas is the surviving spouse of Charles Douglas ("Mr. Douglas"). For over forty years Mr. Douglas was employed by Robin Products Company ("Robin Products"), currently known as Great Lakes Plastics, which is a division of Defendant Evans Industries, Incorporated (the Court will refer to Defendants Great Lakes Plastics and Evans Industries collectively as "Evans Industries"). As of September 1, 1996, Mr. Douglas was covered by a group term life insurance policy issued to Robins Products by Royal Maccabees Life Insurance Company. Defendant Union Central Life Insurance Company ("Union Central") is the successor carrier to Royal Maccabees Life Insurance Company. The validation sticker on the Certificate of Group Term Insurance indicates that Mr. Douglas is a "Class 01" employee with a $50,000 life insurance benefit. (*See* Certificate of Insurance). However, the Certificate also states:

This certificate is furnished in accordance with and subject to the provisions of the group policy, and is issued to the policyholder for delivery to insured persons as evidence of coverage. It does not constitute the group policy and is not a contract of insurance. It explains the essential features of the group benefits provided. You are entitled to this insurance if you are eligible, become insured, and remain insured in accordance with the terms of the group policy.

:    .     .     .     .

This certificate replaces all certificates and booklets previously issued under

this group policy. It is not a contract of insurance. In all cases, the terms of the group policy govern.

(*Id.*). Mr. Douglas designated Plaintiff as his sole beneficiary under the policy.

On May 13, 1998, Mr. Douglas left work after suffering a seizure. Mr. Douglas, who was diagnosed with cancer and began receiving medical treatment, never returned to work. His condition continued to deteriorate and he died on July 14, 1999.

On or about September 16, 1999, Plaintiff submitted a written claim for life insurance benefits to both Evans Industries and Union Central. (Compl.¶ 18). On September 30, 1999, Union Central denied Plaintiff's claim for life insurance benefits, stating:

> According to the Termination of Certificateholder Insurance provision of the policy, the Life Insurance on any Certificateholder will terminate on the earlier of . . . (5) the date of termination of the Certificateholder's employment or active service. Also, according to the Continuation of Certificateholder Insurance Provision of the policy, if a Certificateholder's termination of employment or active service results from illness or injury, his Life Insurance may be continued at the option of the Policyholder, but in no event continue beyond nine months in regards to Life Insurance Benefits.

> Since the late Mr. Douglas's active service terminated on his last day physically on the job, May 13, 1998, and the reason he did not return to work after that date was due to illness or injury, his life insurance could only be continued for nine months beyond that date as long as premiums were paid on his behalf. Our records indicate that premium payments ceased on his behalf at the end of February, 1999. However, since he passed away on July 14, 1999, after the nine month period expired, we regret to inform you that no benefits are available to you under this policy.

(Pl.'s Mot. for Summ. J., Ex. J).

After exhausting her administrative remedies, Plaintiff filed suit against Defendants in Wayne County Circuit Court on December 5, 2000. Defendants removed the action to this Court on December 22, 2000, asserting federal question jurisdiction.

On August 9, 2001, the Court held a hearing regarding a motion for summary judgment[1] filed by Plaintiff and a motion for partial summary judgment filed by Union Central. At that hearing, Union Central conceded that its decision denying benefits to Plaintiff must be reversed in light of a recent Sixth Circuit case, *Stafford v. First Tennessee Nat'l Bank & Union Central Life Ins. Co.*, 230 F.3d 1360, 2000 WL 1359631 (6th Cir.2000).

However, that conclusion did not end the matter. While the parties agree that Plaintiff is entitled to life insurance benefits under her late husband's policy, the amount of benefits that Plaintiff is entitled to remains in dispute. The Schedule of Benefits for the group term life insurance policy at issue indicates that eligible salaried employees ("class 01") are entitled to a life insurance benefit of $50,000, while eligible hourly employees ("class 02") are entitled to a life insurance benefit of only $10,000. (*See* Schedule of Benefits). Union Central and Evans Industries contend

---

1. The Court notes that the Sixth Circuit has instructed that "the concept of summary judgment is inapposite to the adjudication of an ERISA action." *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 619 (6th Cir.1998). Accordingly, the *Wilkins* court established guidelines to replace summary judgment procedures for district courts to use in adjudicating ERISA recovery of benefits actions. *Id.*

that Mr. Douglas was an hourly employee, and Plaintiff is therefore entitled to a maximum benefit of $10,000. Plaintiff, on the other hand, contends that Mr. Douglas was a salaried employee, and she is therefore entitled to $50,000 in life insurance benefits.

At the hearing, the Court explained that as the plan administrator had determined that *no* life insurance benefits were available under the policy, the administrator never had occasion to determine the *amount* of benefits to which Plaintiff would be entitled. *See Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 398 (5th Cir.1998). As such, the record before the Court does not contain a determination by the administrator as to the amount of benefits Plaintiff would be entitled to under the policy.

Under the circumstances, the Court initially believed the case should be remanded to the plan administrator for a determination of the amount of benefits to which Plaintiff is entitled and for the development of a full factual record on that issue.[2] *See Donnelly*, 1999 WL 313896 at *2 (vacating district court's grant of summary judgment and instructing district court to remand action for eligibility determination by administrator); *Cate v. CNA Ins. Co.*, 965 F.Supp. 1039, 1046 (M.D.Tenn.1997) (remanding action to plan administrator for reconsideration and further development of the record); *Schadler*, 147 F.3d 388, 398 (vacating judgment of district court and instructing district court to remand case to plan administrator). However, at the hearing Union Central and Plaintiff agreed that such course of action would only delay an ultimate determination of the issue by this Court, as upon remand Union Central would undoubtedly

determine that Mr. Douglas was an hourly employee, and Plaintiff would then be back before this Court challenging that determination.

Accordingly, rather than have the benefit amount issue referred back to Union Central for a determination, "the parties agreed to allow the Court to make a factual determination on the issue." (Pl.'s Supp. Br. at 1). In stipulating to have this Court render a decision on the issue, the parties agreed that evidence outside the administrative record would be presented to the Court in order to enable the Court to make a determination. After viewing all of the evidence on the issue, the Court shall make a determination on the benefit amount issue using a preponderance of the evidence standard.

### Discussion

The issue before the Court is whether Mr. Douglas was an hourly or salaried employee of Evans Industries when he left employment in May of 1998. If he was a salaried employee, Plaintiff is entitled to life insurance benefits in the amount of $50,000. If Mr. Douglas was an hourly employee, Plaintiff is entitled to life insurance benefits in the amount of $10,000. Plaintiff also argues that even if Mr. Douglas was an hourly employee, Defendants should be estopped from challenging the $50,000 amount listed on the Certificate of Group Term Insurance.

### I. Was Mr. Douglas an Hourly or Salaried Employee?

In their pleadings pertaining to the previous summary judgment motions, the parties discussed evidence they believed supported their positions on this issue, and attached supporting exhibits. In addition, following the hearing on August 9, 2001,

---

**2.** As the Sixth Circuit indicated in *Perry*, "the proper forum for expansion of the record is not the district court but the plan administra-

tor." *Donnelly v. Guarantee Mutual Life Co.*, 181 F.3d 100, 1999 WL 313896 (6th Cir. 1999).

the parties also submitted supplemental briefs[3] on this issue, with supporting exhibits.

*Documents for Insurance Claim Prepared by Evans Industries/Robin Products*

The Court finds that the insurance-related documents prepared by Evans Industries/Robin Products are not helpful to the Court's inquiry, as there are documents that cut both ways.

As Plaintiff notes, a Group Policy Holder's Statement prepared by Human Resource Manager Anita Robinson indicates that Mr. Douglas was a salaried employee. (*See* Pl.'s Supp. Br., Ex. J).

However, A Notice of Claim and Proof of Death form prepared by Robin Products indicates that Mr. Douglas was an hourly employee, even though it listed the insurance amount as $50,000. (*See* Pl.'s Supp. Br., Ex. H). That form had a section that pertained to compensation, in which the preparer was to check one of two boxes. The first box read "basic annual salary as of last day worked for salaried employees," and had a corresponding line for an amount. The other box read "basic weekly earnings as of last day worked for hourly employees," and had a corresponding line for an amount. The Treasurer/CFO of Robins Products, who prepared the form, checked the second box and listed Mr. Douglas' basic weekly earnings as of last day worked for hourly employees as $702.00.[4]

Accordingly, the Court believes these conflicting documents offer little guidance in this inquiry.

*Mulligan's 8/15/96 Memo*

In support of her position that Mr. Douglas was a salaried employee, Plaintiff submits a memo dated August 15, 1996, concerning Mr. Douglas that stated, in pertinent part:

> Shortly after you left yesterday, Bryan asked what Chuck's rate would be if he were to switch to Salaried. Listed below is Chuck's current pay rate information:
>
> 1996 YTD: $26,198.50 (33 wks)   Annualized: $41,282.28
> Current Hourly Rate: $17.25   Last Raise: 11/15/95 $.82/hr
>
> Bryan also informed me that Chuck would like to know what our answer is before the end of the day on Friday (8/16/96). He will be on vacation for the next two weeks and our answer will determine if he will return from vacation.

(*See* Pl.'s Supp. Br., Ex. I).

While the above memo does show that Mr. Douglas *requested* to switch to salaried status, and that he had indicated that whether he returned following his vacation depended upon the company's response to his request, the memo does *not* indicate whether or not the company granted that request. Accordingly, the Court does not find the above memo helpful in determining Mr. Douglas' status when he left active employment in May of 1998. If anything, the memo simply shows that Mr. Douglas

---

**3.** Although Plaintiff's supplemental brief refers to itself as a "supplemental brief in support of Plaintiff's motion for summary judgment," the Court notes that its ruling in this matter is not a determination of whether "summary judgment" should be granted. Rather, the Court is ruling upon whether the record before it warrants a judgment in favor of Plaintiff for $10,000 or for $50,000.

**4.** The Court also notes that on a Notice of Claim and Proof of Death form that appears to have been filled out by Plaintiff, she listed the insurance amount as $50,000 but indicated next to the second box that Charles Douglas' basic weekly earnings as of last day worked for hourly employees was $702.00. (*See* Pl.'s Resp. to Union Central's Mot. for Summ. J., Ex. E).

was not a salaried employee in August of 1996.

*Declaration of Bryan Killop*

Plaintiff also submits the declaration of Bryan Killop ("Killop"), a former employee of Robin Products Company, a division of Evans Industries. (*See* Declaration of Killop, attached as Ex.Q to Pl.'s Supp. Br.). Killop states that he was employed as a Plant Manager at Robin Products until December of 1996, and during that time he worked with Charles Douglas. Killop further states that:

> During the period of time that I worked with him at Robin Products Company, Charles Douglas was always employed as a salaried employee. He worked a regular 40 hour work week and was paid one and one half his regular rate for any hours worked in excess of 40 hours.

(*Id.* at ¶ 3).

Accepted as true, Killop's statement would only establish that prior to December of 1996, Mr. Douglas was a salaried employee at Robins Products. Plaintiff also asserts that Exhibit M,[5] attached to her supplemental brief, "is entirely consistent" with Killop's declaration. Plaintiff asserts that Exhibit M and Killop's Declaration "show that up until at least September of 1996, the insured was a non-exempt salaried employee" who was compensated "for any hours worked in excess of a regular 40 hour work week." (Pl.'s Supp. Br. at 7).

However, Mr. Douglas' employment status prior to September or December of 1996 is *not* determinative in this case. The policy at issue in this case recognized the practical reality that the status of employees often changes after a policy has gone into effect, thereby increasing or decreasing the amount of insurance provided to the Certificateholder.[6] The policy also provides that "[t]he death benefit for any Certificateholder shall be the amount of the life insurance benefit for which he was insured on the date of his death." (*See* Policy at LB–1).

The Court notes that this case is unusual because on the date of Mr. Douglas' death, his insurance coverage had actually lapsed. However, the parties agree that under the policy, Mr. Douglas should have been provided with notice of his right to convert his life insurance coverage under the group policy to an individual policy when he left active employment at Evans Industries, but received no such notice. Nevertheless, even if Mr. Douglas had exercised his right of conversion, the policy provided that "face amount of the new individual policy may not exceed the amount of life insurance which terminated." (Policy at LB–4). Accordingly, it is Mr. Douglas' employment status at the

---

**5.** Exhibit M is a one page document. While the document is blurred and difficult to read, it appears to list the hours Mr. Douglas worked from December of 1993 to September of 1996. It appears that Mr. Douglas worked 40 hours per during each week during this time period, and was also paid for overtime work.

**6.** The policy provides as follows:

CHANGE IN AMOUNT OF INSURANCE. Any increase or decrease in the amount of insurance because of a change in the status of the Certificateholder

1. DUE TO AGE, will take effect on the premium due date which coincides with or next follows the date he attains the required age;
2. DUE TO LENGTH OF SERVICE, will take effect on the premium due date which coincides with or next follows the date he completes the qualifying length of service; or
3. DUE TO ANY OTHER REASON, will take effect on the premium due date which coincides with or next follows the date the change in status takes effect.

(Policy at GP–3).

time he left employment with Evans Industries, in May of 1998, that determines the amount of life insurance he would have been entitled to in an individual policy.

Killop also states that he recalls that "in approximately August of 1996, Charles Douglas requested to change his employment status from non-exempt salaried to exempt salaried in order to get a raise." (*Id.* at ¶ 6). As previously discussed, the fact that Mr. Douglas may have requested the change does not establish that the request was granted. Moreover, the payroll records contradict any suggestion that Mr. Douglas actually became an exempt salaried employee in 1996. As an exempt salaried employee, Mr. Douglas would not have been paid for overtime work. However, the payroll records indicate that after August of 1996, Douglas was paid for overtime work. (*Id.*). For example, in his paychecks dated 1/23/97, 2/6/97, 2/27/97, and 3/20/97, Mr. Douglas was paid for overtime hours worked. (*See* Pl.'s Supp. Br., Ex. K at 1).

*Payroll Records*

### 1. *Employee Earnings Ledger*

Also before the Court is an "Employee Earnings Ledger" for Robins Products Company, that shows payroll information pertaining to Mr. Douglas. (*See* Pl.'s Supp. Br., Ex. K). The Court believes that this ledger weighs heavily in favor of a finding that Mr. Douglas was an hourly, and not a salaried, employee during the relevant time period.

The ledger covers the time period from January of 1997 through June of 1998. Among other things, the ledger lists the weeks in each month, the regular hours worked by the employee, the over time worked, and the employee's net pay. Notably, the only rate listed anywhere on the ledger is "17.55," which certainly appears to be an *hourly* rate. In addition, the Court notes that at time throughout the time period covered by the ledger, Mr. Douglas' "regular" hours were less than 40. In weeks when Mr. Douglas' regular hours were less than 40, the amount of his regular pay was the number of regular hours worked times his hourly rate of $17.55. For example, on page one of the ledger, it shows that during the nineteenth week of 1997, Mr. Douglas worked 36 regular hours. His regular pay was therefore calculated as $631.80 (36 hours at $17.55 per hour).

### 2. *Timecard Records*

Also before the Court are timecard records submitted by Evans Industries. (*See* Def. Evans Industries' Supp. Br., Ex. A). Of the three timecard records submitted, one appears to be dated 12/27/97, one indicates only that it is for the time period "1/5 thru 1/10," and the third has no dates.

It appears to the Court that the "1/5 thru 1/10" timecard record is for a one week period in January of 1998.[7] Notably, all three of the timecard records identify certain departments and employees listed as "Salaried," but clearly do *not* list Mr. Douglas as salaried. Moreover, all three of the timecards list Mr. Douglas as follows:

*Dept: 830102 I/L Hourly (5501)*
3012   Douglas, Charles

(*Id.*)

■ After evaluating all of the of the evidence that has been presented on this issue, the Court finds, by a preponderance

---

7. The timecard lists Mr. Douglas as having 40 regular hours, and also has the notation "+ 43.75" in the section marked "changes." The ledger for January of 1998 shows that in the third pay week of that month, Mr. Douglas was paid for 40 regular hours, and an additional $43.75 for "other." (*See* Pl.'s Supp. Br., Ex.K at 5).

of the evidence, that Mr. Douglas was an hourly employee of Evans Industries when he left active employment in May of 1998. Accordingly, Plaintiff is entitled to $10,000 in life insurance benefits.

## II. Should Defendants Be Estopped From Challenging $50,000 Amount on Certificate?

■ In her supplemental brief Plaintiff also asserts that the Defendants should be estopped from challenging the $50,000 life insurance benefit amount listed on the Certificate of Group Term Insurance. In essence, Plaintiff asserts that her husband relied on the coverage amount stated on the Certificate of Group Term, and that Defendants should be estopped from contesting that amount under *Edwards v. State Farm Mutual Automobile Ins. Co.*, 851 F.2d 134 (6th Cir.1988), or under general principles of equitable estoppel.

■ The Court disagrees. Unlike *Edwards*, this case does not involve a contradiction between the definition of a term contained in a summary plan and the definition of that same term in the full text of the plan. In addition, the Court rejects Plaintiff's invitation to apply equitable estoppel in this case, as Plaintiff has not even addressed, much less established, that the essential elements of equitable estoppel [8] have been met in this case.

## Conclusion

For the reasons set forth above, after evaluating all of the evidence presented, the Court finds that, by a preponderance of the evidence, Mr. Douglas was an hourly employee at the time he left employment with Evans Industries in May of 1998, and Plaintiff is therefore entitled to a life insurance benefit of $10,000. A Judgment consistent with this Opinion shall issue forthwith.

---

[8]. In ERISA cases involving claims of equitable estoppel, all of the following elements must be present before a court may order estoppel: 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental reliance by the party asserting estoppel on the representation. *Michigan Laborers' Health Care Fund v. Gibbons*, 209 F.3d 587 (6th Cir.2000).