Linda MOSS, Plaintiff,

v.

SUNLIFE INSURANCE AND ANNUITY COMPANY OF NEW YORK, Defendant.

SUNLIFE INSURANCE AND ANNUITY COMPANY OF NEW YORK, Third-Party Plaintiff,

v.

U.S. TELE–COMM, INC., Barry Berman and Peter Gordon, Third-Party Defendants.

No. 94 Civ. 3620 (LAK).

United States District Court, S.D. New York.

Dec. 15, 1995.

Frederick R. Dettmer, Karen M. Streisfeld, Law Office of Frederick R. Dettmer, New York City, for Plaintiff.

David K. Fiveson, Butler, Fitzgerald & Potter, New York City, for defendant SunLife Insurance and Annuity Company of New York.

Neil Friedkin, Lamendola & Friedkin, Great Neck, NY, for third-party defendants U.S. Tele–Comm, Inc., Barry Berman and Peter Gordon.

KAPLAN, District Judge.

Linda Moss brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, to recover the $300,000 death benefit on a group life insurance policy that allegedly covered her late husband, Eric Moss, the former general counsel of third party defendant U.S. Tele-Comm, Inc. ("Telecomm"). The defendant, SunLife Insurance and Annuity Company of New York ("SunLife"), suspects that Moss was not an employee of Telecomm, but an independent practitioner and therefore not covered. It disclaimed liability solely on the ground that Telecomm failed to submit proof of Moss' employment satisfactory to SunLife, as the policy allegedly required. SunLife moves for summary judgment dismissing the complaint.

*Facts*

*The Policy*

In late 1991, Telecomm began to seek a group life insurance policy for its employees and commenced serious discussions with SunLife in early 1992. The policy was issued to Telecomm effective May 1, 1992.

The policy provided that it covered "[a]n Employee ... on the first day that the Employee is Actively at Work after completion of the Waiting Period." (Prior Aff. Ex. D (hereinafter "Policy"), at 8) "Employee" was defined as:

> "A person classified by the Employer [Telecomm] as a permanent full-time employee who is scheduled to work at least 30 hours a week at the Employer's place of business or at some other site where the Employer requires him to be."

(*Id.* at 4).[1]

Thus, the policy left Telecomm some discretion in determining which of its personnel qualified for coverage.

The general provisions of the policy contained also the clause that is at the heart of this dispute:

> "Proof We may require proof in connection with the terms or benefits of this Policy. If proof is required, we must be provided with such evidence satisfactory to us as we may reasonably require under the circumstances." (*Id.* at 17)

*Moss' Role at Telecomm*

Eric Moss was one of the founders of Telecomm and served from October 1987 until his death as corporate secretary and legal counsel for Telecomm and its sister company, NAI of New York, Inc. ("NAI").[2] He worked out of an office around the corner from Telecomm's main office, allegedly as a result of space limitations, but he is said

---

1. The Policy provided also that Employment terminated "on the last day of the month in which a person ceases to qualify as an Employee for any reason." (*Id.* at 5) It went on, however, to say that Telecomm could deem that employment continued for a period not later than 12 months during which the employee was absent from work due to illness. (*Id.*) This clause does not appear to be material here, as SunLife questions whether Moss was an employee to begin with, not whether he ceased to be an employee by virtue of absence as a result of his ultimately fatal illness.

2. NAI and Telcomm were under common ownership.

typically to have worked a six day, fifty-plus hour week for Telecomm before he became ill. He was paid both by Telecomm and NAI, and the income was reported to the Internal Revenue Service, at least in 1992, as nonemployee compensation on Form 1099 rather than as wages on Form W–2. Telecomm maintains that this was done because it was advantageous to Moss for tax purposes and that the use of the 1099s is not conclusive of whether Moss was an employee.

In March 1992, Moss was diagnosed with lung cancer. During the ensuing months, he spent significant periods in the hospital and was unable to work as he had done before. Nonetheless, Telecomm claims that it deemed him to be a permanent, full-time employee and continued to pay him on that basis throughout his illness. He died on December 15, 1992.

*The Claim*

Plaintiff filed a death claim form and a death certificate with SunLife on December 22, 1992 seeking benefits in the amount of $300,000. The death certificate, certified by a Deputy Register of Vital Statistics, listed the "name and locality of company or firm" of the decedent as "Eric Moss Atty Great Neck, NY." [3] (Prior Aff. Ex. E, at 1) The employer's portion of the claim form, completed by Telecomm, reported Telecomm as Moss' employer, characterized Moss as an employee, and listed his salary as $180,000 per year. (*Id.* at 2)

The report of Moss' salary as having been $180,000 raised a question at SunLife because employee censuses submitted by Telecomm during 1992 contained inconsistent information, as follows:

| | |
|---|---|
| January | $150,000 |
| March 18 | $130,000 |
| August 10 | $120,000 |
| November | $120,000 |
| December | $150,000 |
| December 22 | $180,000 |

(*Id.* ¶ 9). Since the death benefit was double the employee's salary, up to a maximum benefit of $300,000, these reports raised in Sun-Life's mind the possibility that the benefit payable may have been as low as $240,000

rather than the $300,000 claimed. (*Id.*) In consequence, it requested copies of Moss' W–2 forms for 1992 in the belief that these would accurately report his compensation and permit proper computation of the death benefit. (*Id.* ¶ 10).

Telecomm provided SunLife not with the requested W–2 forms—there were none—but with Form 1099s from Telecomm and NAI, which reported "nonemployee compensation" of $52,500 and $99,400, respectively. (*Id.* ¶ 10 & Ex. M) This led SunLife to conclude that Moss probably was not an employee at all, and certainly not a permanent full time employee of Telecomm, but an attorney acting as an independent contractor. (*Id.*) In consequence, it began further inquiries with respect to the claim.

On April 21, 1993, Peter Gordon, president of Telecomm, responded to SunLife, explaining that Moss had been a permanent full-time employee of Telecomm, that his income had been reported on Form 1099s for the reasons described above, that the use of a 1099 was not conclusive of the question whether Moss had been an employee, and that a majority of the employees listed on the Telecomm employee censuses in fact were employees of NAI, a sister company under common ownership sharing the same address as Telecomm.

SunLife responded on May 27, 1993. It renewed a prior request for time and payroll records, requested a copy of a New York Insurance Department ruling on 1099s that Gordon had mentioned previously, and reported that it had requested Telecomm's broker to provide a complete employee census for Telecomm and NAI, showing which employees worked for which company. (*Id.* Ex. O) Telecomm's broker responded that Telecomm did not maintain time cards and forwarded the other materials requested. (*Id.* Ex. P)

The correspondence culminated soon thereafter. On June 21, 1993, SunLife requested a variety of information and documents including copies of "weekly/monthly payroll record" and vacation and sick time

---

**3.** There is no evidence as to who filled out this part of the death certificate, which appeared above the signatures of the funeral director and the Deputy Registrar of Vital Statistics.

records. It asked also whether Moss had been enrolled in other company benefit plans such as medical and dental insurance and, if so, for documentation thereof. (*Id.* Ex. Q) Telecomm responded, in part, that Moss declined medical coverage because he was insured under his wife's plan and that it did not keep the requested payroll, vacation and sick time records. (*Id.* Ex. L)

On August 23, 1993, SunLife denied the claim, referring specifically to the policy provision quoted above. It stated that "[o]ur reason for denial of the claim is that satisfactory proof of employment has not been furnished." (*Id.* Ex. R) Plaintiff appealed within SunLife, but the appeal was denied by the same individual who had rejected the claim in the first place. (*Id.* Ex. S, T)

### Discussion

*Scope of Review*

■ In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Here the parties have briefed the matter on the assumption that the scope of review is *de novo*, and that appears to be correct. While one might argue that the policy requirement of proof "satisfactory to us" is the sort of commitment of discretion to an administrator that would trigger a more deferential standard of review, such an argument would have little merit here for at least two reasons. First, there is no reason to suppose that Congress intended that courts defer to third party insurers who, like SunLife, have manifest conflicts of interest in construing the terms of their own coverage. *Cf. Firestone*, 489 U.S. at 115, 109 S.Ct. at 956–57. Second, there is no need for such deference in view of the insurers' ability to protect themselves both by drafting the poli-

cy language and by including provisions explicitly conferring discretionary authority to interpret their terms. *Cf. Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 103 (2d Cir.1991). Accordingly, the Court considers the questions here presented *de novo*, considering the plaintiff's claim "as it would ... any other contract claim by looking to the terms of the [policy] and other manifestations of the parties' intent." *Firestone*, 489 U.S. at 112–13, 109 S.Ct. at 955–56.

*Proof Satisfactory to the Insurer*

■ SunLife rests its case principally on the proposition that it was entitled to demand such proof of Moss' employment as might be satisfactory to it. It invokes the well established principle that a reasonable policy condition must be fulfilled before liability can arise. (Def. Br. 4) And it states that it is not satisfied.

SunLife is correct, of course, in pointing out that the common law long has recognized "the existence of contractual obligations where either the satisfactory performance of one party or the existence of a condition precedent is left solely to the good faith judgment of the other party." (Def. Reply Br. 7) But there is more to this issue than SunLife acknowledges.

To begin with, the Court examines the information that SunLife complains was not provided: (a) time and/or payroll records, (b) any employment contract with Moss, (c) vacation and sick time records, and (d) a statement of whether Moss was covered under other Telecomm benefit plans. (Def. Br. 3–4) It acknowledges, however, that Telecomm denied the existence of the requested records and stated that Moss declined its medical coverage.[4] (*Id.* at 4) Hence, its position is not that any existing evidence was withheld, but that it was not convinced by the evidence that was provided. Put another way, it maintains that it is entitled to deny coverage if it can identify and demand a specific type of proof that (a) is relevant to the occurrence of a covered loss and (b) does not exist.

---

**4.** It makes no issue with respect to the failure to provide a copy of any employment contract, as it appears to acknowledge that at Telecomm denied that any existed, or with respect to the lack of

any response with respect to benefits other than medical coverage. (Def. Br. 4; Prior Aff. Ex. L, ¶ 1)

The contract language at issue requires submission of such evidence as SunLife "may reasonably require under the circumstances." There can be little doubt that the information that SunLife requested, if it existed, would bear directly on whether a covered loss occurred. Indeed, the Court cannot fault SunLife for supposing that the absence of the requested records might suggest that there was no covered loss because Moss was not an employee. But the reasonableness of SunLife's attempt to avoid coverage by insisting on proof in a particular form, known by it not to exist, is debatable, to say the least.

■ Nor is it clear that the policy is properly read as SunLife suggests. The effect of adopting SunLife's construction would be to alter the insured's burden by permitting the carrier two lines of defense—that the insured did not provide particular proof reasonably requested *and* that there was no covered loss—rather than the usual contention that there was no covered loss. The purpose of the proof of loss clause in an insurance policy generally is much more limited, confining itself to providing the insurer with "information by which 'the insurer may be able intelligently to form some estimate of his rights and liabilities before he is obliged to pay.'" *Binder v. Commercial Travelers Mutual Accident Ass'n of America,* 165 F.2d 896, 899 (2d Cir.1947) (quoting *O'Reilly v. Guardian Mut. Life Ins. Co. of N.Y.,* 60 N.Y. 169, 173). As the requirement of proof of loss "is to be liberally construed in favor of the insured," *Binder,* 165 F.2d at 899, the Court is not prepared to rule, as a matter of law, that SunLife's is the only reasonable construction of the language, as SunLife must establish in order to prevail. *Vargas v. Ins. Co. of North America,* 651 F.2d 838, 840 (2d Cir.1981); *Filor, Bullard & Smyth v. Ins. Co. of North America,* 605 F.2d 598, 602 (2d Cir.1978), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1506, 59 L.Ed.2d 776 (1979).

In consequence, there are genuine issues as to facts material to disposition of this matter.

*Discovery*

Notwithstanding the expiration of the discovery period and the filing of the pretrial order, the parties have sought an extension of time for discovery. The application is granted to the extent indicating below.

*Conclusion*

The motion for summary judgment is denied.[5]

All discovery shall be completed by January 31, 1996. Any amended pretrial order shall be filed not later than February 15, 1996.

The narrative statements of the direct testimony of plaintiff's witnesses required by this Court's individual rules shall be filed by February 28, 1996. Defendant shall file the narrative statements of its witnesses with respect to both the complaint and the third party complaint, as well as an indication of which if any of plaintiff's witnesses it wishes to cross-examine, on or before March 15, 1996. Plaintiff shall file a statement indicating which, if any, of defendant's witnesses it wishes to cross-examine on or before March 22, 1996. Third party defendants shall file the narrative statements of their witnesses, as well as an indication of which if any of defendant's witnesses they wish to cross-examine, on or before March 29, 1996. Defendant shall file a statement indicating which, if any, of third party defendants' witnesses it wishes to cross examine, as well as narrative statements of the direct testimony of any proposed rebuttal witnesses, on or before April 5, 1996. The parties shall serve and file trial briefs, and the third party defendants shall file a statement indicating which, if any, of defendant's rebuttal witnesses they wish to cross examine, on or before April 19, 1996.

SO ORDERED.

---

5. The Court declines SunLife's invitation to determine whether plaintiff is limited to the proof submitted to SunLife in her effort to establish that Moss was covered by the policy at the time of his death. The argument first was made in SunLife's reply papers, and plaintiff has not yet had an appropriate opportunity to respond.