Harold M. **MACMILLAN**, Plaintiff,

v.

**PROVIDENT MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA and Unum Life Insurance Company of America, Defendants.**

No. 95–CV–6387L.

United States District Court,
W.D. New York.

Jan. 5, 1999.

Christopher A. DiPasquale, Harris, Beach & Wilcox, Rochester, NY, for Harold M. Macmillan, plaintiff.

J. Nelson Thomas, Nixon, Hargrave, Devans & Doyle, LLP, Rochester, NY, for Provident Mutual Life Insurance Company of Philadelphia, defendant.

Deborah H. Karalunas, Patrick J. Rao, Bond, Schoeneck & King, One Lincoln Center, Syracuse, NY, Stephen B. Salai, Cumpston & Shaw, Rochester, NY, Nancy Jerian Marr, Portland, MA, for Unum Life Insurance Company of America, defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Harold M. MacMillan, commenced this action against defendants Provident Mutual Life Insurance Company ("Provident") and UNUM Life Insurance Company of America ("UNUM") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* During his previous employment with Provident, plaintiff was covered by a long-term disability insurance policy purchased by Provident from UNUM. Plaintiff alleges that he is permanently disabled, and that defendants have violated his rights to the policy, first by miscalculating the amount of his benefits, and second by terminating his payments altogether. All parties have moved for summary judgment.

### FACTUAL BACKGROUND

Plaintiff began his employment with Provident as a field underwriter in 1972. In 1988, Provident and UNUM entered into a contract pursuant to which Provident agreed to pay premiums to UNUM in exchange for which UNUM issued a long-term disability policy covering Provident's employees. Plaintiff was covered under the policy.

Plaintiff alleges that he became totally disabled in January 1993 from ulcerative colitis. In September 1993, he filed a claim for benefits with UNUM. UNUM approved the claim on February 1, 1994, retroactive to January 1, 1993. In accordance with the terms of the policy, plaintiff began receiving benefits retroactive to July 1, 1993.

Section I, paragraph 2 of the policy sets the benefit level at two-thirds of "basic monthly earnings not to exceed the [$10,-000] maximum monthly benefit, less other income benefits." Paragraph 6 defines basic monthly earnings ("BME") as the insured's "average monthly rate of earnings from the employer in effect just prior to the date disability begins. It includes earnings from supervisory and second line management salaries, and earnings from first year com-

missions, but not bonuses, overtime pay, advances, collection fees, expense allowances or other extra compensation received from Provident Mutual." Affidavit of Deborah H. Karalunas (Item 44) Ex. B at L–PS–2 – L–PS–3.

Plaintiff alleges that in calculating his BME, defendants failed to include various sources of earnings that should have been included. Specifically, he alleges that defendants should have included renewal commissions, group annuity commissions, and service and persistency fees.

Plaintiff also alleges that on August 15, 1995, eight days after he filed the original complaint in this action, UNUM stopped paying him benefits altogether, on the ground that UNUM had come to the conclusion that plaintiff was no longer disabled. Plaintiff contends that he is disabled, and has been ever since January 1993.

Plaintiff seeks damages for unpaid benefits to date,[1] plus interest, as well as punitive damages and attorney's fees. He also requests declaratory relief concerning his entitlement to benefits and defendants' obligations in that regard.

## DISCUSSION

On June 11, 1998, the court sent a letter to counsel for all the parties asking them to address certain matters relating to the possible bases for liability here and which parties are the proper defendants. The parties' responses have clarified those issues and the precise nature of plaintiff's claims.

In particular, plaintiff has stated that although the complaint alleges that defendants have breached their fiduciary duties to him, he is not asserting a claim for breach of fiduciary duty in violation of 29 U.S.C. § 1109. His only claim is for the recovery of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). He also contends that both defendants may be held liable under that section.

In addition, UNUM concedes that, as the claims administrator, it is a proper party defendant under § 1132(a)(1)(B), though it denies that it is liable to plaintiff. Provident contends that it is not a proper defendant under any statute.

After reviewing the record, I find that UNUM is the only proper responsible defendant here, and that the claims against Provident must be dismissed. I also find that plaintiff is entitled to summary judgment with respect to his claim that his renewal commissions, group annuity commissions, and service and persistency fees should have been included in the calculation of his BME.

## I. Provident's and UNUM's Respective Roles

■ The law is well established in the Second Circuit that in a claim for benefits under the terms of an employee benefits plan pursuant to § 1132(a)(1)(B), "only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir.1989); *accord Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir.1998). Accordingly, an employer cannot be held liable in such a suit unless it is the designated plan administrator or trustee. *Crocco*, 137 F.3d at 107–08.

■ Although Provident concedes that it is the designated plan administrator, under the facts of this case, I conclude that plaintiff's claim against Provident must be dismissed. Provident did nothing here in its capacity as administrator of the plan that could establish liability on its part to pay benefits to plaintiff pursuant to § 1132(a)(1)(B). In addition, although UNUM may have relied to some extent on information supplied to it by Provident when calculating plaintiff's BME, and hence the amount of his benefit, ultimately it was UNUM's responsibility to determine these matters. Whatever relief that plaintiff is entitled to in this regard must come from UNUM, not from Provident.

This is made evident by the fact that there is really no relief that could be granted to plaintiff against Provident. The court cannot direct Provident to pay benefits to plaintiff, since it is not Provident's decision whether to

1. The request in the complaint, as of September 30, 1995, was $98,691.72.

do so. Assuming that the court could direct Provident to inform UNUM that renewal commissions and the other items in question should be included in the calculation of plaintiff's BME, it would be pointless to do so; if the court were to determine that those items should be included, the court could simply direct UNUM to do so.

As the plan booklet itself indicates, benefits would be payable by UNUM if certain conditions were met. UNUM—which is referred to in the booklet as "we," "our," and "us," *see* J. Nelson Thomas Aff. (Item 36) Ex. C—states, "We will pay you a monthly benefit ..." in certain circumstances. *Id.* at LC–BEN–1. Nowhere is there any suggestion that Provident would play any role in determining an employee's eligibility for benefits, or the correct benefit amount.

The insurance policy also states that the "employer will furnish at regular interval intervals" to UNUM information concerning employees who qualify to become insured, whose amounts of insurance change, or whose insurance terminates, as well as "any other information about this policy that may be reasonably required." It further states that "[t]he employer's records which, *in the opinion of [UNUM]*, have a bearing on the insurance will be opened for inspection by [UNUM] at any reasonable time." The policy states that "[c]lerical error .or omission, will not: a. deprive an employee of insurance; b. affect an employee's amount of insurance; or c. effect or continue an employee's insurance which otherwise would not be in force." It also states that "[i]f relevant facts about any employee were not accurate ... a fair adjustment of premium will be made; and ... the true facts will decide if and in what amount insurance is valid under this policy." Karalunas Aff.Ex. B at L–GPP–1 – L–GPP–2 (emphasis added).

These provisions, of course, may be largely for UNUM's benefit, so that it is not obligated to provide benefits to which an employee is not actually entitled. Nevertheless, they indicate that UNUM had the discretion to determine which facts it considered relevant to an employee's coverage, and based on those facts, the extent of that coverage.

As stated, UNUM concedes that as the claims administrator, it has the authority for the "full and fair review" of claims and to make benefit determinations. Thomas Aff. Ex. C at 27. Pursuant to federal regulations, UNUM is therefore the "appropriate named fiduciary" for purposes of claim review. Section 2560.503–1(g)(2) Title 29 of the Code of Federal Regulations provides that

> [t]o the extent that benefits under an employee benefit plan are provided or administered by an insurance company, ... the claims procedure pertaining to such benefits may provide for review of and decision upon denied claims by such company.... In such case, that company ... shall be the "appropriate named fiduciary" for purposes of this section.

Section 2560–503–1 deals with procedures pertaining to benefit claims and review of claim denials. Review of claims and claim denials is to be undertaken by the appropriate named fiduciary. 29 C.F.R. § 2560.503–1(g). Accordingly, UNUM is the proper defendant in this action challenging a denial of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). *See Harless v. Research Institute of America*, 1 F.Supp.2d 235, 241 (S.D.N.Y.1998) (employer was not proper defendant in claim for recovery of benefits, since it could not be liable for failing to pay benefits).

## II. Calculation of Basic Monthly Earnings

### A. Standard of Review

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under [29 U.S.C. § 1132(a)(1)(B) ] is to be reviewed under a de novo standard unless the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the court is to apply the more deferential arbitrary-and-capricious standard.

One indication of the presence or absence of discretionary authority is whether the plan uses categorical or conditional language. *Smith v. Rochester Tel. Business Marketing Corp.*, 786 F.Supp. 293, 298

(W.D.N.Y.1992), *aff'd,* 40 F.3d 1236 (2d Cir. 1994). For example, in *Heidgerd v. Olin Corp.,* 906 F.2d 903, 908 (2d Cir.1990), the Second Circuit held that a statement in a plan that began, "Benefits *are* payable if . . ." did not give the administrators discretion, but another statement that "In some unusual cases, benefits *may* be payable . . ." did grant discretion to interpret the plan.

■ The policy in this case sets forth a precise formula for determining the amount of benefits, and expressly defines what is and is not included in one's BME. It does not permit UNUM to decide, for example, to include bonuses in an employee's BME; bonuses are expressly excluded.

Even assuming *arguendo* that there are any ambiguous terms in the plan, that is no reason to conclude that UNUM has the authority to construe any ambiguous terms. Completely missing from the policy is any language indicating that UNUM has such discretion. This case therefore stands in sharp contrast to *Smith,* where the issue was whether the plan administrator had discretion to determine what constituted "compensation" for purposes of calculating a retiree's benefit rate. In *Smith,* discretion was clearly lodged with the administrator. There, the plan provided that the administrator "shall interpret the Plan and shall determine all questions arising in its interpretation, and application of the Plan. Any such determination by the [administrator] shall be conclusive and binding on all persons." 786 F.Supp. at 298. In the case at bar, UNUM has pointed to no such language in the plan, and there is simply no basis upon which to conclude that UNUM has discretion to construe terms in the plan.

■ In support of its assertion that the court should apply the abuse-of-discretion standard in this case, UNUM relies upon the Supreme Court's statement in *Bruch* that this standard should be applied if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." UNUM interprets the Supreme Court's use of the disjunctive "or" to mean that an administrator's discretionary authority to determine eligibility for benefits, alone, is always enough to trigger the abuse-of-discretion standard, regardless of whether the administrator also has discretion to construe the terms of the plan. I disagree.

I reject this argument, for two reasons. First, as explained below in connection with UNUM's determination that plaintiff is no longer disabled, I find that the plan does not confer any discretionary authority upon UNUM. Even if it does, however, that authority is limited to discretion to determine eligibility for benefits, and does not extend to the calculation of the amount of benefits.

UNUM's interpretation of *Bruch* is too expansive. I read *Bruch* to mean that the court should review a plan administrator's decisions for abuse of discretion whenever those decisions were made pursuant to discretionary authority conferred upon the administrator by the plan. Certainly a plan can confer such authority in some areas, but not others. There is no reason to take an all-or-nothing approach in which *any* grant of discretionary power, no matter how limited, makes *all* decisions of the administrator subject to review for abuse of discretion.

The case at bar illustrates this very principle. I will assume *arguendo* that the policy implicitly gives UNUM discretionary authority to determine eligibility for benefits, since it provides that benefits are to be paid only upon UNUM's receipt of "proof" that an employee is disabled and requires regular medical care. Although there is an issue in this case concerning whether plaintiff is disabled (which is addressed below), the issue at hand, however, is not whether plaintiff is eligible for benefits, but whether UNUM's determination of the amount of his benefit is consistent with the terms of the plan. The plan gives UNUM no discretion on this point. There is no logical reason why any discretionary authority that UNUM might have to decide whether plaintiff is eligible for benefits should require this court to apply a deferential standard to UNUM's calculation of his benefit amount.

This case is therefore distinguishable from those relied upon by UNUM. UNUM cites *Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 637 (5th Cir.1992), in which the Fifth

Circuit held that even though the plan at issue did not expressly give the administrator authority to construe plan terms, its express conferral of discretionary authority to determine eligibility for benefits "satisfie[d] one of the alternative *Firestone* criteria for review under an abuse of discretion standard ..." The issue in *Wildbur*, however, was whether the plaintiffs were entitled to benefits at all, not whether the administrator had correctly calculated their benefit amounts. Likewise, although UNUM states that other courts have previously held that UNUM plans similar to the one in this case vest UNUM with discretionary authority, the issue in both those cases, *Infantino v. Waste Mgt., Inc.,* 980 F.Supp. 262 (N.D.Ill.1997), and *Bollenbacher v. Helena Chem. Co.,* 926 F.Supp. 781 (N.D.Ind.1996), was whether the plaintiffs were disabled and hence eligible for disability benefits.

The situation in the case at bar is more similar to that in *Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372 (6th Cir.1996). There, the plaintiffs challenged on several grounds the amount of disability benefits provided to them by the defendant insurance company, which issued the disability policy in question to the plaintiffs' employer. The district court granted summary judgment in favor of the defendants.

On appeal, the Sixth Circuit held that the district court erred in applying the arbitrary-and-capricious standard to the insurer's decisions concerning the level of the plaintiffs' benefits. Noting that the plan document provided that a claimant was required to "furnish proof of the continuance of total disability ...," the court said that although this and other language in the plan gave the defendant discretion to determine who was eligible for benefits, it "d[id] not, however, give Met Life discretion over decisions concerning the level of benefits payable to Plan beneficiaries, a matter of contract interpretation." *Id.* 73 F.3d at 1376–77. The court therefore proceeded to review the defendant's interpretation of the plan *de novo,* "without deferring to either party's interpretation." *Id.* 73 F.3d at 1377 (quoting *Bruch,* 489 U.S. at 112, 109 S.Ct. 948). *See also Ziaee v. Vest,* 916 F.2d 1204, 1206–07 (7th

Cir.1990), *cert. denied,* 499 U.S. 959, 111 S.Ct. 1581, 113 L.Ed.2d 646 (1991) (plan provision that "creates discretion over investment strategies [for plan assets] but does not affect the computation of benefits due, given the strategy selected ... give[s] the Administrator power to decide but do[es] not imply discretion to construe," and the district judge therefore "properly reached his own decision about the plans' meaning" with respect to amounts plaintiffs were owed for their interests in employer's two pension plans at the time that plaintiffs left the firm).

The same reasoning applies here. Even assuming that UNUM has discretion to determine whether an applicant is entitled to receive benefits, it lacks discretion to interpret the terms of the plan, and accordingly this court will review *de novo* UNUM's calculation of the amount of plaintiff's benefit.

## B. Amount of Plaintiff's Benefit

### 1. Group Annuity Commission

■ Among the items that plaintiff contends were improperly excluded from the calculation of his BME is a commission that he earned in 1992 from the sale of a group annuity. In response, UNUM does not contend that the exclusion of this commission was based upon any language contained in the plan, but states that it relied upon Provident's statements about what commissions were included in the benefit calculation. *See* Affidavit of Frankie Puthoff (Item 42) ¶ 9. A copy of a summary of plaintiff's first year commissions for 1992 provided to UNUM by Provident does reflect that plaintiff earned about $30,000 in group commissions that year, but a footnote states that these are "[n]ot included for benefits purposes." Karalunas Aff.Ex. D.

As stated, I am reviewing UNUM's decisions with respect to what constitutes BME *de novo.* In doing so, I am of course guided by the language of the plan. I find no language in the plan that supports UNUM's exclusion of these earnings from group commissions. Since UNUM ultimately had the responsibility to calculate plaintiff's benefit, it could not simply abdicate that responsibility

and rely on a statement by Provident that was inconsistent with the plan itself.

The plan contains no language indicating that group annuity commissions are not included in an employee's BME. The policy states only that "[f]irst year cash commissions include Life and Annuity commissions, including chargebacks, received from Provident Mutual." *Id.* Ex. B at L–PS–3. If anything, this definition seems *inclusive* rather than *exclusive*, since it makes no distinction between individual and group products. In short, there is no basis for UNUM's exclusion of plaintiff's group annuity commission, and even if I were to review UNUM's decision for abuse of discretion, I would reach the same conclusion. *See Hamner v. Unum Life Ins. Co. of America,* No. C 96–1973, 1997 WL 257515 * 5 (N.D.Cal. May 6, 1997) (any attempted exclusion of certain types of compensation "was not clear, plain or conspicuous enough to negate an ordinary person's reasonable expectation" that they would be included in benefit calculation).

## 2. Renewal Commissions

■ Plaintiff also challenges UNUM's exclusion of renewal commissions from his BME. UNUM contends that under the terms of the policy, first year commissions, *i.e.,* commissions from the sale of new products, that are received by the employee during the twelve months immediately preceding the onset of his disability, are included in BME, but that renewal commissions, *i.e.,* commissions for products sold by plaintiff prior to that twelve-month period, but subsequently renewed by the policyholder, are not included.

UNUM contends that the statement in the policy that BME "includes earnings from ... first year commissions" constitutes an implicit exclusion of renewal commissions. The fact is, though, that the policy itself neither expressly includes or excludes renewal commissions from BME. It does expressly exclude certain other forms of compensation, such as bonuses, overtime pay, and "other extra compensation ..." One could argue with equal persuasiveness that the omission of renewal commissions from this list of excluded items amounts to an implicit inclusion of renewal commissions within the definition of BME. Certainly it would have been a simple matter for UNUM to have listed renewal commissions among the excluded items.

In fact, it appears that UNUM has now done so; attached to Provident's motion for summary judgment is a copy of the policy dated 1/1/95. Its definition of BME is identical to the policy in effect at the time that plaintiff began receiving benefits (which is dated 1/1/92), except that the words "renewal commissions" have been added to the beginning of the list of excluded compensation, immediately prior to the word "bonuses." Thomas Aff.Ex. B at L–PS–3.[2] Admittedly, that does not mean that prior to that amendment, UNUM believed that BME should include renewal commissions. It does illustrate, however, the ease with which UNUM could have *expressly* excluded renewal commissions in the policy, if that was truly its intent.

Interpreting the plan to include renewal commissions within the definition of BME is also consistent with the overall purposes of the plan. Although neither the policy nor the plan booklet provided to employees contains a formal statement of purpose, the evident purpose of the policy is to ensure that employees suffering from a long-term disability will continue to receive a stream of income that is not drastically lower than that which they received prior to the onset of the disability. The policy implicitly deems two-thirds of the employee's average income in the year preceding the disability to constitute an amount of income commensurate with that purpose.[3]

---

**2.** Two amendments attached to the 1995 policy state that page L–PS–3 was amended effective November 1, 1994 and again effective January 1, 1995. *Id.* at L–PA–1. The 1994 amendment added renewal commissions to the list of excluded items. *See* MacMillan Aff. (Item 55) Ex. C. By their terms, however, both apply only to disabilities that started on or after their effective dates.

UNUM determined that plaintiff's disability commenced in 1993.

**3.** Since the plan in this case was funded by the participants themselves, *see* Thomas Aff.Ex. C at LC–PO–3, benefits received under the plan would be exempt from income taxes pursuant to 26 U.S.C. § 104(a)(3). When that is taken into ac-

UNUM does not deny that renewal commissions often constitute a significant portion of an insurance agent's income, or that they accounted for a sizeable part of plaintiff's pre-disability income. Plaintiff contends that in 1992 he earned roughly $68,500 in first year commissions, $31,000 in renewal commissions, and $27,000 in service and persistency fees, which are also included within plaintiff's renewal income. To exclude such a substantial portion of plaintiff's pre-disability income from his BME would grossly understate his average earnings prior to his becoming disabled.

It should also be noted that the plan provides that the amount of any renewal commissions that the employee receives during the period when benefits are being paid is to be deducted from the benefit amount. Karalunas Aff.Ex. B at L–BEN–3. Several other types of income, such as workers' compensation or other disability benefits relating to the same disability for which the UNUM plan pays a benefit, retirement benefits, etc., are likewise to be deducted. *Id.* at L–BEN–2 – L–BEN–3.

These provisions are understandable. If the purpose of the plan is to maintain a level of income roughly comparable to the employee's pre-disability income, then other sources of income that the employee receives could reasonably be used as an offset against the benefits being paid under the UNUM policy. Otherwise, the recipient could actually end up with a *higher* income level than he enjoyed prior to the onset of the disability, a windfall that these provisions are clearly meant to avoid.

To also exclude renewal commissions from the employee's BME, however, would unfairly penalize the employee. Such an approach would maintain the fiction that renewal commissions were not a part of the employee's average pre-disability income, thereby greatly diminishing the employee's BME, yet then recognize those commissions as a source of income during the period when benefits are paid, thereby reducing the amount of the employee's benefits even further. I see no basis upon which to infer such an intent underlying this plan.[4]

To the extent that the plan could be considered ambiguous in this respect, it is appropriate to construe that ambiguity against UNUM, the drafter of the plan. Although I do not believe it necessary to resort to this rule of *contra proferentum* in this case because a fair reading of the plan supports the view that renewal commissions should be included in BME, the Second Circuit has endorsed the use of this rule when the court conducts a *de novo* review of an administrator's determinations. *See I.V. Services of America, Inc. v. Trustees of the American Consulting Engineers Council Ins. Trust Fund,* 136 F.3d 114, 121 and n. 9 (2d Cir. 1998); *Masella v. Blue Cross & Blue Shield of Connecticut, Inc.,* 936 F.2d 98, 107 (2d Cir.1991).

### III. Plaintiff's Disability

### A. Standard of Review

■ As stated, whether the court reviews a denial of benefits under a *de novo* or arbitrary-and-capricious standard depends on whether the administrator has "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Bruch,* 489 U.S. at 115, 109 S.Ct. 948. Such authority, however, is not established merely because the administrator has the *power* to deny a claim. *See Lund v. Unum Life Ins. of America,* 19 F.Supp.2d 1254, 1258 (D.Utah 1998) ("Under *Firestone,* the mere fact that an administrator must make an eligibility decision is not enough"). For instance, in *Heidgerd,* 906 F.2d 903, the plan administrator denied severance benefits to a group of employees whose operating unit had been sold to another company, based on the administrator's interpretation of the relevant severance pay plan. Affirming a judgment for the plaintiff following a bench trial, the

---

count, the employee's benefit would likely be quite close to his average net income prior to the commencement of the disability.

**4.** I recognize that the 1995 plan submitted by Provident appears to have precisely these effects, but it was within UNUM's power to amend the plan to so provide. I am holding only that, absent such express language, there is no basis upon which to read such a provision into the plan applicable to plaintiff.

Second Circuit held that the plan contained no grant of discretion with respect to the challenged decision, and that the district court therefore properly reviewed that decision *de novo*. The court noted that the plan booklet stated, "You *will* receive payment" under certain circumstances, and that "[b]enefits *aren't* payable" under certain other circumstances. *Id.* 906 F.2d at 908. The court held that this language "le[ft] no room for any supposition that ... the plan administrator had discretion as to whether or not severance benefits would be awarded." *Id.* 906 F.2d at 909.

■ By the same token, then, a disability plan administrator's power to deny a claim on the ground that the employee is not disabled and hence not eligible for benefits is not in itself enough to show that the administrator has *discretionary* authority in this regard. Although there are no "magic words" required to establish a grant of such authority, *Jordan v. Retirement Committee of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir.1995) (quoting *Schein v. News America Publishg, Inc.*, 1991 WL 117638 *4 (S.D.N.Y. June 24, 1991)), "courts that have found that alleged grants of discretion did not justify arbitrary and capricious review have noted the absence of such language." *Jordan*, 46 F.3d at 1271 (collecting cases). At any rate, regardless of the specific language used, the intent to invest the administrator with discretionary authority must be clear. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir.1998) (en banc). *See also Brown v. Seitz Foods, Inc. Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir.1998) ("The proper way to secure deferential court review of an ERISA plan administrator's claims decisions is through express discretion-granting language").

■ In determining whether plan administrators have been granted discretionary authority, the court should "focus on the breadth of the administrators' power—their 'authority to determine eligibility for benefits or to construe the terms of the plan.' " *Block v. Pitney Bowes, Inc.*, 952 F.2d 1450, 1453 (D.C.Cir.1992) (quoting *Bruch*, 489 U.S. at 115, 109 S.Ct. 948). Since the administrator bears the burden of proving that the arbi-

trary-and-capricious standard should apply, however, *see Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 230 (2d Cir.1995), "any ambiguities must be construed against the administrator and in favor of the party seeking judicial review." *Arthurs v. Metropolitan Life Ins. Co.*, 760 F.Supp. 1095, 1098 (S.D.N.Y.1991).

■ The plan in this case, far from expressing any clear grant of discretionary authority, contains only very basic language that one would expect to find in any insurance policy. In support of its assertion that the court should apply the arbitrary-and-capricious standard in this case, UNUM relies upon a statement in the plan that UNUM will pay benefits upon receiving "proof" of the claimant's continuing disability and regular attendance of a physician. Karalunas Aff. Ex. B at L–BEN–1. The plan also provides that UNUM, "at its own expense, will have the right and opportunity to have an employee, whose injury or sickness is the basis of a claim, examined by a physician or vocational expert of its choice." *Id.* at L–GPP–2. UNUM cites two cases, *Infantino*, 980 F.Supp. 262, and *Bollenbacher*, 926 F.Supp. 781, in which district courts held that similar language in UNUM policies implied a grant of discretionary authority to UNUM.

A review of the case law in this area, however, reveals that those cases are in a distinct minority. Most of the courts that have addressed the issue have held that absent a clear grant of discretion, this sort of proof-of-claim language will not trigger application of a deferential standard of review. For example, in *Brown*, 140 F.3d 1198, the Court of Appeals for the Eighth Circuit held that a plan statement requiring "due ... proof of loss" and similar phrases "read like a typical insurance policy' and 'do not trigger the deferential ERISA standard of review.' " *Id.* 140 F.3d at 1200 (quoting *Ravenscraft v. Hy–Vee Employee Benefit Plan & Trust*, 85 F.3d 398, 402 n. 2 (8th Cir.1996)); *see also Bounds v. Bell Atl. Enters. Flexible Long–Term Disability Plan*, 32 F.3d 337, 339 (8th Cir.1994) (deferential standard under *Bruch* not triggered by policy provision that claims

would be paid after administrator "receives adequate proof of loss").

The Court of Appeals for the Second Circuit has not yet ruled on the issue, but there is at least a suggestion in *I.V. Services*, 136 F.3d at 122 n. 9, that it would not consider language that merely gives the administrator the authority to decide the question of eligibility enough to require application of the arbitrary-and-capricious standard. The plan in *I.V. Services* provided that the insurance company would "make the decision as to whether" certain medical services were covered under the plan, and that the insurer would "make[ ] determination on appeal of claim denials." Though finding it unnecessary to decide the issue, the Second Circuit "observe[d] that the Plan provisions ... 'bear little resemblance to the typical plan provisions cited in recent post-*Firestone* appellate decisions as the basis for a more deferential review.'" *Id.* (quoting *Masella*, 936 F.2d at 103). The court added that "[t]his grant of authority does not approach the 'typical plan provisions' on the basis of which appellate courts have exercised review under the more deferential arbitrary and capricious standard." *Id.* (collecting cases).

Many district courts in cases involving UNUM policies have held that language identical or very similar to that at issue in this case does *not* confer discretionary authority upon UNUM, and that UNUM's decisions regarding eligibility for benefits are to be reviewed *de novo*. For instance, in *Lund*, 19 F.Supp.2d at 1258, the court, stating that "the mere fact that an administrator must make an eligibility decision is not enough," applied a *de novo* standard to UNUM's denial of the plaintiff's claim. *Accord Ragsdale v. Unum Life Ins. Co. of America*, 999 F.Supp. 1016, 1024 (N.D.Ohio 1998); *Zinn v. UNUM Life Ins. Co. of America*, 979 F.Supp. 1146, 1153 (E.D.Mich.1997), *vacated*

on other grounds, 985 F.Supp. 714 (E.D.Mich.1997).

Similarly, the court in *Jones v. Unum Life Ins. Co. of America*, No. C–95–20255, 1996 WL 193854 (N.D.Cal. Apr. 18, 1996), rejected UNUM's argument that the language, "when the Company receives proof of the claim" gave it discretionary authority to determine eligibility for disability benefits. The court stated that "[t]he UNUM policy language merely dictates that UNUM receives the proof. It in no way suggests that UNUM has discretionary authority to construe the plan, but only describes the duties of the plan administrator. Such language is not sufficient to grant discretionary authority to UNUM regarding benefit decisions." *Id.* 1996 WL 193854 at *3.

Stating that "[i]t is difficult to find in the plan language in this case the clear grant of discretionary authority which the defendant UNUM argues is in there," the court in *Renfro v. UNUM Life Ins. Co. of America*, 920 F.Supp. 831 (E.D.Tenn.1996), held that neither the proof-of-disability language nor the clause giving UNUM the right to require that a claimant be examined by a health care professional gave UNUM discretionary authority to decide eligibility for benefits. *Id.* 920 F.Supp. at 837–38. The court observed that "[i]t is difficult to conceive of a disability insurance policy without some language like that in the first [*i.e.*, proof-of-disability] clause on which the defendant relies." *Id.* 920 F.Supp. at 838.[5]

This is not to say that proof-of-claim language could under no circumstances convey a grant of discretionary authority. While there is some authority that it may, most of those cases involved plans stating that the proof had to be "satisfactory," and often that the proof had to be satisfactory *to the administrator*. *See, e.g., Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir.1996) (plan's requirement that claimant

---

5. The Ninth Circuit (in an unreported decision) and the Fifth Circuit have also held that UNUM had no discretion to determine eligibility for disability benefits, but it is not clear whether the proof-of-claim language in those cases was identical to that in the case at bar. *Jones v. Unum Life Ins. Co. of America*, 141 F.3d 1176 (Table), 1998 WL 121638 *1 (9th Cir.1998); *Nesom v.*

*Brown and Root, U.S.A., Inc.*, 987 F.2d 1188, 1192 n. 4 (5th Cir.1993).

I also note that in *Dawes v. First Unum Life Ins. Co.*, 851 F.Supp. 118, 119 (S.D.N.Y.1994), "UNUM concede[d] that the plan at issue d[id] not give [UNUM] discretion to determine eligibility or construe the plan," although the court did not quote the relevant plan language.

submit "satisfactory proof of Total Disability to us" implied that determination of whether evidence was satisfactory was subjective judgment on part of plan administrator); *Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir.1996) (plan provided that no benefits would be paid unless administrator was presented with what it considered to be satisfactory written proof of loss); *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 379 (7th Cir.1994) (plan provided that proof "must be satisfactory to us"); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (insurer would pay benefits only "on the basis of medical evidence satisfactory to the Insurance Company").[6] The use of such language suggests that the administrator may have some discretion to decide that the proof submitted is unsatisfactory.

Many of the courts that have found a lack of discretion have noted the absence of such language in the plans at issue. In *Ragsdale*, 999 F.Supp. 1016, for example, the court, stating that "there is, at least arguably, a difference between the requirement that a claimant submit 'satisfactory proof' or 'due proof' and the requirement that a plaintiff submit simply 'proof,'" said that

> [t]he presence of the modifier could indicate that someone will be in a position to decide whether the proof submitted is, in fact, satisfactory or due. The absence of the modifier could indicate that "proof" will be determined according to objective, reasonable standards—would a reasonable person consider that the existence of a disability had been proved?

6. Two district judges from within this circuit have held that even language stating that proof must be "satisfactory" does not confer discretionary authority on the administrator. In *Kinstler v. First Reliance Std. Life Ins. Co.*, No. 96 CIV. 921, 1997 WL 401813 (S.D.N.Y. July 16, 1997), the court held that a statement in a disability benefits policy that benefits would be paid if the beneficiary submitted "satisfactory proof of Total Disability to us" did not give the insurance company discretion to decide what constituted satisfactory proof. Stating that "the 'vast majority' of cases decided since *Firestone* in which ERISA plans have been found to grant discretionary authority have involved much more clear and explicit language regarding the scope of discretion," *id.* 1997 WL 401813 at *6 (quoting *Scalamandre v. Oxford Health Plans*, 823 F.Supp.

*Id.* 999 F.Supp. at 1024. In any event, the court stated, since "the Supreme Court stated in *Bruch* that the default position in these cases is *de novo* review," the court would review the defendant's rejection of the plaintiff's claim for benefits *de novo*. *Id.*

Similarly, in *Hamner*, 1997 WL 257515, the court, even though stating that "the Ninth Circuit liberally construes benefit plans as granting discretionary authority," *id.* 1997 WL 257515 at *2, nonetheless held that the statement in UNUM's policy that it would pay benefits when it "receives proof" of disability and the attendance of a physician did not clearly grant UNUM the discretionary authority to determine eligibility for benefits. Even assuming that requiring proof of disability implies that the proof must be "satisfactory," the court stated, "there [wa]s no indication from the face of the policy that the plan administrator must consider the proof to be satisfactory." *Id.* Stating that the plan's "language simply does not put employees on notice that the company has discretionary authority to determine eligibility for benefits," the court said that "such language most reasonably creates an objective standard—proof 'satisfactory' to a reasonable person." *Id.* 1997 WL 257515 at *3.

In *Holsey v. UNUM Life Ins. Co. of America*, 944 F.Supp. 573 (E.D.Mich.1996), the court stated that UNUM's policy (which contained the same proof-of-claim language as that at issue here) contained "no express requirement ... that the administrator determine, in its own discretion, whether the submitted proof of disability is satisfactory. As such, UNUM does not have the requisite

1050, 1059 (E.D.N.Y.1993)), the court said that it was unconvinced that "the isolated phrases, 'satisfactory proof' and '[w]e consider,' should be construed to imply a broad grant of discretion over decisions regarding denial of benefits." *Id.* 1997 WL 401813 at *7. *See also Moss v. Sunlife Ins. and Annuity Co. of New York*, 907 F.Supp. 747, 750 (S.D.N.Y.1995) (rejecting argument that the policy requirement of proof "satisfactory to us" triggered more deferential standard of review, since there was no reason to suppose that Congress intended courts to defer to third-party insurers with "manifest conflicts of interest in construing the terms of their own coverage," and because there is no need for such deference in view of the insurers' ability to protect themselves by including express discretion-granting language in their policies).

discretion under the policy necessary for this court to invoke the 'arbitrary and capricious' standard of review.' " *Id.* 944 F.Supp. at 577. The court therefore reviewed UNUM's determination denying the plaintiff's claim for disability benefits *de novo.*

Holding that UNUM lacked discretionary authority to determine eligibility, the court in *Williamson v. Unum Life Ins. Co. of America,* 943 F.Supp. 1226 (C.D.Cal.1996), *appeal dismissed,* 160 F.3d 1247 (9th Cir.1998), distinguished the Ninth Circuit's decision in *Snow,* 87 F.3d 327, stating that "the Policy at issue here does not specify that the proof must be satisfactory, much less that the proof must be satisfactory to UNUM." *Id.* 943 F.Supp. at 1229. Regardless of whether the plan could have been construed as impliedly requiring that the proof meet some threshold of sufficiency, the court stated, the plan did not clearly give UNUM discretion, and a *de novo* standard of review therefore applied. *Id. See also Lund,* 19 F.Supp.2d 1254, 1258 (noting that "the term 'proof' [in UNUM's plan] is not modified by any term indicating that the eligibility determination might be subjective, such as 'satisfactory,' 'due,' or 'proper' "); *Kinstler,* 1997 WL 401813 at *8 n. 4 (distinguishing *Donato* and *Miller* because the plans in those cases specifically stated that the proof had to be satisfactory *to the insurance company,* as opposed to simply "satisfactory"); *Hamner,* 1997 WL 257515 at *3 n. 3 (same).

Likewise, the plan in the case at bar requires only the submission of "proof." The word "proof" is accompanied by no modifier, "satisfactory" or otherwise. Even assuming, as a matter of common sense, that the word "proof" implies that the evidence submitted must at some level at least tend to establish that the claimant meets the criteria for receiving benefits, there is no indication that UNUM has discretion to decide whether it considers the proof submitted to be satisfactory.

It is also worth noting that many of the district court cases finding that proof-of-claim requirements confer discretion upon the administrator are from the Seventh Circuit, which held in *Patterson v. Caterpillar, Inc.,* 70 F.3d 503 (7th Cir.1995), that a plan's

statement that benefits would be payable only upon receipt of "due proof" of disability was sufficient to warrant application of the arbitrary-and-capricious standard. The district courts in these cases believed that their decisions were mandated by, or at least consistent with, *Patterson. See, e.g., Lefebvre v. Ivex Pkg. Corp.,* No. 97 C 4411, 1998 WL 325258 *5 (N.D.Ill. June 11, 1998); *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan,* 979 F.Supp. 726, 729 (N.D.Ill.1997); *Infantino,* 980 F.Supp. at 266; *Bollenbacher,* 926 F.Supp. at 786. In fact, one district court from the Seventh Circuit, though stating that it found compelled under *Patterson* to find that a requirement of proof of disability is sufficient, by itself, to grant discretion to the administrator to determine eligibility for benefits, nevertheless criticized the law in the Seventh Circuit, where, the court said, "incrementally and perhaps without conscious design, we appear to have arrived at such a minimalist conception of what is necessary to confer discretion that almost no claim for benefits under an ERISA plan will be reviewed de novo by our district courts," since "[v]irtually all such plans necessarily link a claimant's eligibility for benefits to the submission of some form of proof—of illness, disability, accident, etc." *Vander Pas v. UNUM Life Ins. Co. of America,* 7 F.Supp.2d 1011, 1015–16 (E.D.Wis. 1998) (footnote omitted). Clearly, then, at least one of those district courts would have reached a different result had it not felt bound to follow *Patterson,* and thus the weight of authority would be even more lopsided in favor of applying the *de novo* standard. At any rate, the *Patterson* decision is not binding in this circuit, and I decline to follow it. I agree with the court in *Vander Pas* that "the effect of the *Patterson* and *Donato* holdings [within the Seventh Circuit] comes close to the 'wholesale importation of the arbitrary and capricious standard into ERISA,' which the Supreme Court found 'unwarranted.' " *Id.* 7 F.Supp.2d at 1016 (quoting *Bruch,* 489 U.S. at 109, 109 S.Ct. 948).

## B. Proof of Disability

■ On August 15, 1995, Frankie Puthoff, a Senior Risk Specialist at UNUM,

sent a letter to plaintiff's attorney. The letter noted that the policy provided that a person insured under the policy would initially be considered disabled if he could not "perform each of the material duties of his regular occupation," but that after benefits had been paid for twenty-four months, the insured would not be considered disabled unless he could not "perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education, or experience." Puthoff stated that this twenty-four-month period had expired for plaintiff on July 1, 1995, and that based on the medical information that UNUM had on file, coupled with plaintiff's current activities (such as playing golf), UNUM had concluded that plaintiff's condition did not prevent him from returning to work in an office or other environment where he would have access to a restroom. The letter stated that plaintiff therefore no longer was considered disabled, and that UNUM was terminating his benefits.

Plaintiff contends that the medical evidence shows conclusively that he is completely disabled. He alleges that his condition prevents him from being able to commit to being at a specific place at a specific time, and also prevents him from traveling long distances without a narcotic medication, which impairs his ability to work or drive. He also alleges that he suffers from constant abdominal cramping, has frequent bowel movements, and occasional loss of bowel control.

■ In support of his motion for summary judgment, plaintiff has submitted evidence that was never presented to or considered by UNUM at the time that it decided to terminate plaintiff's benefits. In particular, plaintiff has submitted affidavits by two physicians: Howard D. Merzel, M.D., who is plaintiff's treating physician; and Robert N. Kornfield, M.D., who examined plaintiff in February 1997 at Provident's request. Plaintiff has also submitted a notice from the Social Security Administration ("SSA") dated January 28, 1998, informing plaintiff that he had been found to meet the medical requirements to receive Social Security disability benefits, and that the evidence obtained by SSA first showed a disabling condition on July 8, 1995. UNUM objects to all this evidence, contending that the affidavits and SSA notice are inadmissible because they are outside the administrative record.

The courts have not been entirely uniform with respect to the question of whether a court conducting a *de novo* review of an administrator's decision may consider evidence outside the administrative record. *Compare, e.g., Luby v. Teamsters Health, Welfare and Pension Trust Funds,* 944 F.2d 1176, 1184–85 (3d Cir.1991) (district court exercising *de novo* review over ERISA determination is not limited to evidence before the administrator), *with Perry v. Simplicity Engineering,* 900 F.2d 963, 966–67 (6th Cir. 1990) (court should conduct *de novo* review of administrator's decision to deny benefits based only on record before administrator).

The Second Circuit addressed this issue in *DeFelice v. American Int'l Life Assurance Co. of New York,* 112 F.3d 61 (2d Cir.1997). In *DeFelice,* the defendant insurance company had refused to pay accidental-death benefits after the plaintiff's husband died, because the company concluded that the decedent had died of a heart attack, not—as claimed by the plaintiff—from choking. An appeals committee composed entirely of employees of the defendant ruled in the defendant's favor.

On appeal from a judgment in favor of the plaintiff following a jury trial, the Second Circuit held that the district court properly admitted evidence that had not been before the appeals committee because the case involved a conflicted administrator. Where a conflict exists at the administrative level, the court said, "courts *must* exercise fully their power to review *de novo* and to *be* substitute administrators." *Id.* 112 F.3d at 66. Describing the appeals committee as "hardly a neutral decisionmaking body," the court held that

where the district court reviews an administrative decision under a plan that does *not* grant ... discretion, the review is *de novo* and is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence. A demonstrated conflict of interest in the administrative reviewing

body is an example of "good cause" warranting the introduction of additional evidence. Moreover, ... the plaintiff need not demonstrate that the conflict caused her actual prejudice in order for the court to consider the conflict to be "good cause."

*Id.* 112 F.3d at 66–67.

In the case at bar, UNUM is conflicted in exactly the same way as the appeals committee in *DeFelice*. As the claims administrator, UNUM has an obvious interest in not paying benefits, and the Second Circuit's ruling in *DeFelice* therefore justifies this court's consideration of the new evidence submitted by plaintiff. *See Grady v. Paul Revere Life Ins. Co.*, 10 F.Supp.2d 100, 112 (D.R.I.1998) ("defendant's obvious conflict of interest in the present case offers precisely the type of 'good cause' found by the Second Circuit in *DeFelice*").

 The burden of proving entitlement to coverage for an insurance benefit rests with the claimant. *Abnathya v. Hoffmann–LaRoche, Inc.*, 2 F.3d 40, 47–8 (3d Cir.1993); *George v. First Unum*, No. 93 Civ. 2916, 1996 WL 701018 *2 (S.D.N.Y. Dec. 5, 1996). Although the medical evidence submitted by plaintiff is certainly adequate to defeat defendant's motion for summary judgment, I cannot find on the record before me that plaintiff has carried his burden for purposes of his own summary judgment motion.

As stated, plaintiff has submitted affidavits containing the opinions of two physicians who have examined or treated plaintiff, both of whom opine that plaintiff is totally and permanently disabled. Plaintiff has also submitted the SSA notice, which is admissible though not conclusive in this context, *see Gentile v. John Hancock Mut. Life Ins. Co.*, 951 F.Supp. 284, 288 (D.Mass.1997), as well as his own affidavit in which he describes his condition and the effect that it has on his daily activities.

The evidence submitted by UNUM, on the other hand, is largely anecdotal, consisting primarily of documentary and eyewitness evidence indicating that during the period in which he was receiving benefits, plaintiff continued to perform some office work and engage in outdoor recreational activities such as golf. When weighed against the expert opinion evidence submitted by plaintiff, this evidence is far from compelling and requires denial of UNUM's motion for summary judgment. Nevertheless, the record is not sufficiently clear for the court at this point to rule as a matter of law that plaintiff's condition prevents him from "perform[ing] each of the material duties of *any* gainful occupation for which he is reasonably fitted by training, education, or experience." "Summary judgment is not appropriate when a genuine issue of material fact exists regarding the plaintiff's status as disabled." *Cate v. CNA Ins. Cos.*, 965 F.Supp. 1039, 1044 (M.D.Tenn. 1997). Accordingly, both sides' motions for summary judgment must be denied. *See Postma v. Paul Revere Life Ins. Co.*, No. 95 C 6575, 1998 WL 641335 *10–11 (N.D.Ill. Sept. 10, 1998) (on summary judgment, court could not make credibility determinations necessary to resolve disputed factual issue of whether plaintiff could perform duties of her job as computer consultant); *Cannon v. Vanguard Group, Inc.*, No. CIV. A. 96–5495, 1998 WL 310663 *5 (E.D.Pa. June 11, 1998) (denying plaintiff's motion for summary judgment because there were issues of fact as to whether plaintiff was "totally disabled" within meaning of plan); *Morris v. Paul Revere Ins. Group*, 986 F.Supp. 872, 884 (D.N.J. 1997) (denying plaintiff's motion for summary judgment because defendant had offered evidence sufficient to create material issue of fact regarding whether plaintiff could perform "important duties" of his job); *Attar v. Unum Life Ins. Co. of Amerian*, No. CA 3–96–CV–0367–R, 1997 WL 446439 *6 (N.D.Tex. July 19, 1997) (whether plaintiff was physically disabled, entitling him to benefits, remained a disputed issue of material fact that could not be resolved on summary judgment); *Brown v. Washington Nat'l Ins. Co.*, 942 F.Supp. 1078, 1080 (E.D.La.1996) (genuine issue of fact remained regarding plaintiff's status as "disabled" within meaning of insurance policy); *Scothorn v. Connecticut Gen'l Life Ins. Co.*, No. C 95–20437, 1996 WL 341110, *4 (N.D.Cal. June 13, 1996) (record was not sufficient for court to determine whether plaintiff was disabled under terms of disability plan); *Brasher v. Prudential Ins. Co. of America*, 771 F.Supp. 280, 283

**616**

(W.D.Ark.1991) (evidence presented by plaintiff that her deceased husband had been so disabled prior to death as to be unable to pursue gainful employment was sufficient to defeat defendant's motion for summary judgment on issue of disability).

 The question remains, then, what course to pursue at this point. Although some courts, upon finding that genuine issues of material fact exist regarding whether a plaintiff is disabled, have remanded to the plan administrator for reconsideration based upon additional evidence, *see, e.g., Perlman,* 979 F.Supp. at 731; *Cate,* 965 F.Supp. at 1046, I do not believe that this would be the wisest course of action here. For one thing, remand is more appropriate when the court applies the arbitrary-and-capricious standard of review, since under that standard the court must give some deference to the administrator's findings. *See Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1099 n. 3 (7th Cir.1994) (on *de novo* review, district court need not remand to administrator, but can resolve disputed factual issues in bench trial).

 Moreover, even when the arbitrary-and-capricious standard applies, remand is unnecessary if it would be a "useless gesture." *Miller,* 72 F.3d at 1071; *accord Schleibaum v. Kmart Corp.,* 153 F.3d 496, 503 (7th Cir.1998), *petition for cert. filed,* 119 S.Ct. 872, —— U.S. ——, —— L.Ed. —— (1999); *Welsh v. Burlington Northern, Inc.,* 54 F.3d 1331, 1340 (8th Cir.1995). Here, although it may not be an absolute certainty that, upon remand, UNUM would again conclude that plaintiff is not disabled, that result appears highly likely. The affidavits of Drs. Merzel and Kornfield that plaintiff has submitted in this case, though "new" in the sense that they were prepared for purposes of this litigation and were not previously submitted to UNUM, nonetheless contain little that is new or different in the way of medical information or opinions. They are largely based on medical reports that date back to, or have not significantly changed from, the time of the onset of plaintiff's alleged disability. The only changed circumstance supporting UNUM's decision to discontinue plaintiff's benefits appears to be that under the terms of the policy, a different

definition of "disabled" applied after plaintiff had been receiving benefits for twenty-four months, not that his medical condition has improved. It therefore seems very unlikely that UNUM would alter its conclusion if plaintiff's application for continued benefits were remanded to UNUM. Were UNUM to reaffirm its conclusion that plaintiff is not entitled to benefits, the case would return to me, who, as the finder of fact, would give no deference to UNUM's decision. To remand under these circumstances, then, would probably accomplish nothing more than to waste the time and effort of everyone involved. Accordingly, the parties' motions for summary judgment will be denied, and this case will be set down for trial. *See Postma,* 1998 WL 641335 *11 (trial necessary on whether plaintiff was disabled); *Cannon,* 1998 WL 310663 *5–6 (parties should be prepared to have case listed for trial of issue of whether plaintiff was totally disabled); *Zinn,* 979 F.Supp. at 1156 (case would proceed to trial on issue of disability); *Attar,* 1997 WL 446439 *13 (identifying "[w]hether the Plaintiff is physically disabled as defined by the Shearson Lehman plan" as an issue for trial); *Fritts v. Purina Mills, Inc.,* 892 F.Supp. 130, 136 (W.D.Va.1995) (court would conduct bench trial to resolve question of whether plaintiff's condition prevented him from being gainfully employed).

## CONCLUSION

Plaintiff's motion for summary judgment (Item 51) is granted with respect to his claim that his renewal commissions, group annuity commissions, and service and persistency fees should have been included in the calculation of his Basic Monthly Earnings. In all other respects, plaintiff's motion for summary judgment is denied.

Defendant Provident Mutual Life Insurance Company's motion for summary judgment (Item 36) is granted, and the complaint is dismissed as to Provident Mutual Life Insurance Company.

Defendant UNUM Life Insurance Company of America's motion for summary judgment (Item 39) is denied.

Plaintiff and UNUM are directed to report in writing to the court within thirty (30) days of the date of entry of this Decision and Order on whether they have been able to agree on the amount of unpaid benefits through August 15, 1995, based on the recalculation of the amount that plaintiff should have received pursuant to my rulings in this Decision and Order. If the parties are unable to agree on that amount, the court will schedule a prompt inquest on damages.

The parties are further directed to contact Magistrate Judge Jonathan W. Feldman within ten (10) days of entry of this Decision and Order to set up a conference before him to set a final discovery schedule and to resolve any remaining discovery issues.

IT IS SO ORDERED.